# Exhibit 1

Electronically Filed by Superior Court of California, County of Orange, 04/07/2026 05:39:27 PM.
30-2026-01561335-CU-BC-NJC - ROA # 3 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

|  | FOR COURT USE ONLY |
| --- | --- |
|  | (SOLO PARA USO DE LA CORTE) |

**NOTICE TO DEFENDANT:** SELECTIVE INSURANCE COMPANY OF
**(AVISO AL DEMANDADO):** AMERICA, a corporation domiciled in New Jersey;
MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, an unknown
entity domiciled in New Jersey;
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:** JOHN MARTINDALE, formerly
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** doing business as "Horizon
Underpinning," an individual, and HORIZON UNDERPINNING, LLC, a
California limited liability company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):

North Justice Center
1275 North Berkeley Avenue
Fullerton, CA 92832

| CASE NUMBER: (Número del Caso): | 30-2026-01561335-CU-BC-NJC |
| --- | --- |

Assigned for All Purposes

Judge Donald F. Gaffney

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Siavash Daniel Rashtian, Esq. (SBN 228644); Saleem K. Erakat, Esq. (SBN 233452)
RASHTIAN LAW GROUP, APC, 15615 Alton Parkway, Suite 450, Irvine, CA 92618          (949) 420-9954

DATE:
(Fecha)  04/07/2026    DAVID H. YAMASAKI, Clerk of the Court    Clerk, by *J. Esquivel*    J. Esquivel    , Deputy
(Secretario) _____    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): CHAMPLAIN SPECIALTY INSURANCE COMPANY, a limited liability company domiciled in Delaware

under: [X] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[X] other (specify): limited liability company

4. [ ] by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov Westlaw Doc & Form Builder |
| --- | --- | --- |

**SUM-200(A)**

| SHORT TITLE: JOHN MARTINDALE, et al. v. SELECTIVE INSURANCE COMPANY OF AMERICA, et al. | CASE NUMBER: 30-2026-01561335-CU-BC-NJC |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

CHAMPLAIN SPECIALTY INSURANCE COMPANY, a limited liability company domiciled in Delaware; WESTCONGRESS INSURANCE SERVICES, LLC, a Delaware limited liability company; and DOES 1 to 100, inclusive

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**<br>STREET ADDRESS: 1275 N. Berkeley Ave<br>MAILING ADDRESS: 1275 N. Berkeley Ave<br>CITY AND ZIP CODE: Fullerton 92838<br>BRANCH NAME: North Justice Center | *FOR COURT USE ONLY*<br>**FILED**<br>*SUPERIOR COURT OF CALIFORNIA*<br>*COUNTY OF ORANGE* |
| PLANTIFF: John Martindale et.al. | |
| DEFENDANT: Selective Insurance Company of America et.al. | **Apr 11, 2026**<br>Clerk of the Court<br>By: J. Esquivel, Deputy |
| Short Title: MARTINDALE VS. SELECTIVE INSURANCE COMPANY OF AMERICA | |
| **NOTICE OF HEARING**<br>**CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>30-2026-01561335-CU-BC-NJC |

Please take notice that a(n), <u>Case Management Conference</u> has been scheduled for hearing on <u>09/08/2026</u> at <u>09:00:00 AM</u> in Department <u>N16</u> of this court, located at <u>North Justice Center</u>.

**Plaintiff(s)/Petitioner(s) to provide notice to all defendant(s)/respondent(s). Parties who file pleadings that add new parties to the proceeding must provide notice of the Case Management Conference to the newly added parties.**

**IMPORTANT:** Prior to your hearing date, please check the Court's website for the most current instructions regarding how to appear for your hearing and access services that are available to answer your questions.
Civil Matters - https://www.occourts.org/media-relations/civil.html
Probate/Mental Health - https://www.occourts.org/media-relations/probate-mental-health.html
Appellate Division - https://www.occourts.org/media-relations/appeals-records.html

**IMPORTANTE:** Antes de la fecha de su audiencia, visite el sitio web de la Corte para saber cuáles son las instrucciones más actuales para participar en la audiencia y tener acceso a los servicios disponibles para responder a sus preguntas.
Casos Civiles - https://www.occourts.org/media-relations/civil.html
Casos de Probate y Salud Mental - https://www.occourts.org/media-relations/probate-mental-health.html
División de apelaciones - https://www.occourts.org/media-relations/appeals-records.html

**QUAN TRỌNG:** Trước ngày phiên tòa của quý vị, vui lòng kiểm tra trang mạng của tòa án để biết những hướng dẫn mới nhất về cách ra hầu phiên tòa của quý vị và tiếp cận những dịch vụ hiện có để giải đáp những thắc mắc của quý vị.
Vấn Đề Dân Sự - https://www.occourts.org/media-relations/civil.html
Thủ Tục Di Chúc/Sức Khỏe Tinh Thần - https://www.occourts.org/media-relations/probate-mental-health.html
Ban phúc thẩm - https://www.occourts.org/media-relations/appeals-records.html

Clerk of the Court, By: _J. Esquivel_____ , Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

North Justice Center
1275 N. Berkeley Ave
Fullerton  92838

**SHORT TITLE:** MARTINDALE VS. SELECTIVE INSURANCE COMPANY OF AMERICA

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**30-2026-01561335-CU-BC-NJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Notice of Hearing has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practices and addressed as indicated below. The certification occurred at Fullerton , California, on 04/11/2026. Following standard court practice the mailing will occur at Sacramento, California on 04/13/2026.

Clerk of the Court, by: *J. Esquivel* _____ , Deputy

RASHTIAN LAW GROUP, APC
15615 ALTON PARKWAY # 450
IRVINE, CA 92618

---

Electronically Filed by Superior Court of California, County of Orange, 04/07/2026 05:39:27 PM.
30-2026-01561335-CU-BC-NJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | | FOR COURT USE ONLY |
|---|---|---|
| NAME: Siavash Daniel Rashtian, Esq.; Saleem K. Erakat, Esq.<br>STATE BAR NUMBER: 228644; 233452<br>FIRM NAME: RASHTIAN LAW GROUP, APC<br>STREET ADDRESS: 15615 Alton Parkway, Suite 450<br>CITY: Irvine   STATE: CA   ZIP CODE: 92618<br>TELEPHONE NO.: (949) 420-9954   FAX NO.: (949) 540-9867<br>EMAIL ADDRESS: daniel@rashtianlaw.com; saleem@rashtianlaw.com<br>ATTORNEY FOR (name): Plaintiff John Martindale | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: North Justice Center
MAILING ADDRESS: 1275 North Berkeley Avenue
CITY AND ZIP CODE: Fullerton, CA 92832
BRANCH NAME:

CASE NAME: JOHN MARTINDALE, et al. v. SELECTIVE INSURANCE
COMPANY OF AMERICA, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $35,000)   ☐ Limited (Amount demanded is $35,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2026-01561335-CU-BC-NJC<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Asbestos**
☐ Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/Unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Employment Development Department (EDD)**
☐ EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Comprehensive groundwater adjudication (47)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3

Westlaw Doc & Form Builder ➞

<div align="right">CM-010</div>

2. Is this case complex under rule 3.400 of the California Rules of Court? ☐ Yes ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

   a. ☐ Large number of separately represented parties

   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

   c. ☐ Substantial amount of documentary evidence

   d. ☐ Large number of witnesses

   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

   a. ☒ monetary

   b. ☒ nonmonetary; declaratory or injunctive relief

   c. ☒ punitive

4. Number of causes of action (specify):Seven

5. Is this case a class action suit? ☐ Yes ☒ No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:

Siavash Daniel Rashtian, Esq.
<div style="margin-left:2em;">(TYPE OR PRINT NAME)</div>

▶ _____
<div style="margin-left:30em;">(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)</div>

---

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

<div align="right">SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.</div>

---

Rev. January 1, 2026        **Civil Case Cover Sheet**        CM-010, Page 2 of 3

<div align="right">→</div>

CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

Rev. January 1, 2026      **Civil Case Cover Sheet**      CM-010, Page 3 of 3

Electronically Filed by Superior Court of California, County of Orange, 04/07/2026 05:39:27 PM.
30-2026-01561335-CU-BC-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By J. Esquivel, Deputy Clerk.

**Siavash Daniel Rashtian, Esq. (SBN 228644)**
**Saleem K. Erakat, Esq. (SBN 233452)**
**RASHTIAN LAW GROUP, APC**
15615 Alton Parkway, Suite 450
Irvine, CA 92618
Telephone:  (949) 420-9954
Facsimile:  (949) 540-9867
daniel@rashtianlaw.com
saleem@rashtianlaw.com

Attorneys for Plaintiffs JOHN MARTINDALE, FORMERLY DBA "HORIZON UNDERPINNING," AND HORIZON UNDERPINNING, LLC

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

**Assigned for All Purposes**

Judge Donald F. Gaffney

| | |
|---|---|
| JOHN MARTINDALE, formerly doing business as "Horizon Underpinning," an individual, and HORIZON UNDERPINNING, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA, a corporation domiciled in New Jersey; MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, an unknown entity domiciled in New Jersey; CHAMPLAIN SPECIALTY INSURANCE COMPANY, a limited liability company domiciled in Delaware; WESTCONGRESS INSURANCE SERVICES, LLC, a Delaware limited liability company; and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO.  30-2026-01561335-CU-BC-NJC<br><br>**PLAINTIFFS JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT;**<br>2.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>3.  **PROMISSORY ESTOPPEL (PLED IN THE ALTERNATIVE);**<br>4.  **NEGLIGENCE;**<br>5.  **NEGLIGENT MISREPRESENTATION;**<br>6.  **UNFAIR COMPETITION; AND**<br>7.  **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

Plaintiffs JOHN MARTINDALE ("Mr. Martindale") and HORIZON UNDERPINNING LLC ("Horizon") (collectively "Plaintiffs") hereby allege as follows:

## INTRODUCTION

1.      Plaintiffs Mr. Martindale and Horizon bring this action against Defendant insurance carrier SELECTIVE INSURANCE COMPANY OF AMERICA ("Selective"), insurance carrier MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY ("Mesa"), insurance carrier CHAMPLAIN SPECIALTY INSURANCE COMPANY ("Champlain"), and insurance carrier WESTCONGRESS INSURANCE SERVICES, LLC ("WestCongress"), for wrongfully denying and failing to defend and provide coverage in connection with litigation and arbitration that directly implicates their named insured, Mr. Martindale, formerly doing business as Horizon Underpinning, and conduct covered by Mr. Martindale's insurance policies despite tenders and repeated requests, causing substantial defense costs, exposure to default risk in arbitration, and other damages.

2.      It appears, through public records, that WestCongress and Champlain operate as affiliated entities within a common corporate enterprise, sharing common ownership and integrated operations under the Champlain Insurance Group. Likewise, Mesa is a subsidiary of Selective.

3.      Plaintiffs have been provided with written correspondence confirming that Mesa and WestCongress are insurance carriers, but it is possible they are, and have been, operating on behalf of Selective and Champlain, respectively.

4.      In 2017, RAF Development, LLC ("RAF") and Glenn E. Farmer ("Mr. Farmer") retained Mr. Martindale, formerly doing business as Horizon Underpinning (now Horizon Underpinning, LLC), to perform engineering, underpinning, grading, and related site and retaining wall work at a residential property located at 21166 Placerita Canyon Road, Santa Clarita, California 91321 (the "Subject Property").

5.      The purchasers of the Subject Property, Shawn Thursby-Palmer and Benjamin Thursby, first sued RAF, Mr. Farmer, and Horizon in *Shawn Thursby-Palmer v. RAF Development LLC, et al.*, in the Los Angeles Superior Court, Case Number 23CHCV02661 (the "LASC Action") alleging, among other things, that defects and issues at the Subject Property were caused by Mr. Martindale's work, which had been undertaken while Mr. Martindale was doing business as Horizon

-2-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

Underpinning. Following those allegations, Mr. Martindale timely tendered claims for defense and indemnity to the applicable insurers. Thereafter, both Mr. Martindale and Horizon were named as defendants in the related arbitration *Thursby-Palmer v. RAF Development LLC, et al.*, which is before JAMS, Reference Number 5220006379 (the "Arbitration"). The litigation and arbitration involve the same set of operative facts (collectively, the "*Thursby-Palmer* Action").

6.     In 2020, RAF retained Horizon to perform engineering, underpinning, grading, and related site and work at a residential property located at 27811 Abadejo, Mission Viejo, CA 92692 (the "Mission Viejo Property").

7.     The purchasers of the Mission Viejo Property, years after the sale, brought a separate petition to compel arbitration against RAF entitled *Ross Nemeroff, et al. v. RAF Development, LLC*, Orange County Superior Court Case No. 30-2023-01354057-CU-PT-CJC and JAMS Reference No. 1200062055 (collectively, the "*Nemeroff* Action"). The *Nemeroff* Action expressly involves claims against Horizon.

8.     Mr. Martindale and/or Horizon expressly agreed, in two written construction contracts from 2017 and 2020, each titled "Horizon Underpinning – RAF Development Construction Contract and Indemnity Agreement" with RAF and Mr. Farmer, to fully defend, indemnify, and hold RAF and Mr. Farmer harmless from "any and all claims" arising out of any alleged acts, omissions, negligence, or willful misconduct of Horizon or its personnel.

9.     The 2017 "Horizon Underpinning – RAF Development Construction Contract and Indemnity Agreement" is a written construction contract between Horizon (Mr. Martindale) and RAF executed on April 1, 2017, which incorporates an attached Addendum B-3 (Indemnity Agreement) containing this indemnity obligation and further provides that the indemnity includes, without limitation, payment of all penalties, fines, judgments, awards, decrees, attorneys' fees, related costs or expenses, and reimbursement of RAF's legal fees, expenses, and costs. The parties also agreed that their intent was to provide "as broad an indemnification as possible under California law."

10.    The 2020 "Horizon Underpinning – RAF Development Construction Contract and Indemnity Agreement," again attaches and incorporates Addendum B-3 (Indemnity Agreement) and reiterates Horizon's obligation to defend, indemnify, and hold harmless RAF and Mr. Farmer on the

-3-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

same breadth of terms, including fee and cost reimbursement, with the same stated intent for maximum permissible scope under California law.

11.     For well over a year, Mr. Martindale and Horizon have been the victims of bad faith, breach of contract, and negligence due to Defendants' refusal to indemnify or defend the litigation arising from and directly involving Mr. Martindale's engineering and underpinning work, despite Mr. Martindale having paid thousands of dollars for such coverage. Indeed, despite tendering the *Thursby-Palmer* Action and the *Nemeroff* Action back in 2024, Defendants first ignored the tenders for nearly a year and then proceeded to fail to reimburse any defense fees and costs incurred, and then, even worse, engaged in bad faith actions.

12.     From their inception, Defendants were obligated to fully defend Mr. Martindale and Horizon for the *Thursby-Palmer* Action and the *Nemeroff* Action, as well as to reimburse Mr. Martindale and Horizon for their defense and indemnity of RAF and Mr. Farmer for these actions pursuant to the 2017 and 2020 written construction contracts and as upstream entities and vicarious insureds for sums the insureds are legally obligated to pay. *See Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 840; *Hanover Ins. Co. v. Paul M. Zagaris, Inc.* (N.D. Cal. 2017) 237 F. Supp. 3d 925.

13.     Rather than fulfill their obligations and duties, Defendants have instead:

a)     First, ignored the tenders of defense for the *Thursby-Palmer* Action and the *Nemeroff* Action for nearly a year and then proceeded to fail to reimburse any defense fees and costs incurred.

b)     Wrongfully refused to defend despite tenders clearly demonstrating a potential for coverage, ignoring California's rule that the duty to defend arises immediately upon tender and extends to the entire action, even mixed actions, whenever the complaint or extrinsic facts reveal a mere potential for coverage. *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46-49 ("[T]he insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed."); *Aerojet-General Corp. v. Transport Indem. Co.* (1997) 17 Cal.4th 38, 57-60 (holding that an "insurer has a duty to defend

-4-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

the entire 'mixed' action" because immediate defense requires an entire defense).

c)   Relied on narrow "insured status" arguments to claim Horizon, RAF, and Mr. Farmer are not named insureds, denying coverage despite California law's mandate of insurance coverage where, as here, Horizon, RAF, and Mr. Farmer are sued based on alleged vicarious liability for Mr. Martindale's underpinning and engineering work done while doing business as Horizon Underpinning because policies covering Mr. Martindale extend defense to "any person or organization legally responsible" for the named insured's conduct. *American States Ins. Co. v. Progressive Casualty Ins. Co.* (2009) 180 Cal.App.4th 18, 31-36.

d)   Misstated the defense trigger by contending that the policy period for the Mesa Policies ended in 2017 while alleged damage surfaced in 2022-2023, even though the duty to defend is triggered by the potential that property damage stems from work within the policy period and then extends to later manifestations and the entire action. *Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.* (1996) 45 Cal.App.4th 1, 50 (affirming that "coverage for a manifested loss is not terminated by the expiration of the policy; coverage continues until the damage is complete"); *Aerojet-General, supra,* 17 Cal.4th at 57-59, 75.

e)   Asserted "contract-claim" labels to defeat coverage, contrary to California law recognizing that Commercial General Liability insurance coverage turns on the nature of the injury and risk, not pleading labels, and can encompass liabilities pleaded as contractual damages. *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 838-839 (affirming that commercial general liability policy that provides coverage for sums the insured is "legally obligated to pay as damages" does not necessarily preclude coverage for losses pleaded as contractual damages).

-5-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

f)    Defendants improperly conflated coverage and defense functions by attempting to recharacterize coverage counsel as defense counsel, obstructing competent appearances and defense activity despite directions to appear, and refusing to provide conflict-free counsel and funding where required. *Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 875-877; Civ. Code, § 2860; *Industrial Indem. Co. v. Great American Ins. Co.* (1977) 73 Cal.App.3d 529, 532-534 (affirming the need for conflict free counsel).

g)    Constructively refused to defend and mishandled the defense in bad-faith by failing to respond to pleadings and discovery and failing to pay required arbitral fees.

14.    Plaintiffs bring this action against Defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, negligent misrepresentation, unfair competition, and declaratory relief arising from Defendants' failure to defend and indemnify in connection with claims and arbitration proceedings brought by Shawn Thursby-Palmer and Benjamin Thursby related to the sale and renovation of the Subject Property and arbitration proceedings brought by Ross Nemeroff and Matthew Tonick related to the sale and renovation of the Mission Viejo Property.

15.    Defendants' conduct in relation to the *Thursby-Palmer* and *Nemeroff* Actions constitute insurance bad faith, contractual breaches, and negligence.

## THE PARTIES

16.    Mr. Martindale is an individual residing in Orange County, California. Mr. Martindale previously conducted his engineering and underpinning contracting business under the fictitious business name "Horizon Underpinning." In 2019, Mr. Martindale formed Horizon Underpinning, LLC. Mr. Martindale is a licensed engineering contractor in the State of California.

17.    Mr. Martindale is the named insured. Mr. Martindale, formerly doing business as Horizon Underpinning, is alleged to have performed work at issue in the *Thursby-Palmer* Action, and "John R. Martindale dba Horizon Underpinning" is specifically named as a defendant in the Second Amended Complaint.

-6-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

18. Horizon is alleged to have extensively performed work at issue in the *Nemeroff* Action, and Horizon is specifically named as a defendant in the *Nemeroff* Action.

19. Horizon is a California limited liability company, the successor in interest to Mr. Martindale's business operations conducted as "Horizon Underpinning," and has a direct interest in the insurance policies, tenders, and claims at issue. Horizon is a named defendant in the *Thursby-Palmer* Action.

20. Defendants Selective and Mesa are insurers and one or both issued commercial general liability policies to Mr. Martindale, specifically Policy Nos. MP0004008005026 (9/12/14-9/12/15), MP0004008007341 (9/12/15-9/12/16), and MP0004008009769 (9/12/16-9/12/17). Selective and Mesa received Mr. Martindale's tenders and denied or refused defense and indemnity as alleged herein.

21. Defendants Champlain and WestCongress are insurers that issued commercial general liability policies to Horizon, specifically Policy No. WCCNCGL000012001. Champlain and WestCongress received Mr. Martindale's tenders but failed to provide a defense or to fund necessary costs.

22. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs Mr. Martindale and Horizon, who therefore sue defendants by such fictitious names. Plaintiffs Mr. Martindale and Horizon will ask for leave of Court to amend this Complaint to show the true names and capacities when the same have been ascertained.

23. Defendants Selective, Mesa, Champlain, WestCongress, and Does 1 Through 100 are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

24. Jurisdiction and venue are proper in the Superior Court of the State of California, County of Orange, because a substantial part of the events or omissions giving rise to these claims occurred in this forum, the underlying arbitration and related proceedings include matters connected to Orange County, and Defendants conducted insurance business and received tenders and correspondence in this forum. As such, each individual or entity has sufficient minimum contacts

-7-

with Orange County, California so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25. Moreover, Defendants are subject to jurisdiction pursuant to Code of Civil Procedure Section 410.10. This Court has jurisdiction over the parties.

26. This Court has subject matter jurisdiction over this action pursuant to California law, including without limitation, the Constitution of the State of California, Article VI, Section 10.

27. Venue is proper in this Court under California law, including without limitation, pursuant to the Code of Civil Procedure Sections 392, et seq. because Mr. Martindale resides in Orange County, Horizon is located in Orange County, and Selective and/or Mesa and Champlain and/or WestCongress issued insurance policies to Plaintiffs in Orange County. Additionally, the breach of contract and bad faith by Defendants occurred in this judicial jurisdiction, and Plaintiff suffered injury in the County of Orange.

## FACTUAL ALLEGATIONS

28. Selective is a licensed insurance carrier and Mesa is an unadmitted insurance company. One or both wrote and issued Policy Numbers MP0004008005026 (9/12/14-9/12/15), MP0004008007341 (9/12/15-9/12/16), and MP0004008009769 (9/12/16-9/12/17) to Mr. Martindale (the "Mesa Policies"). Mr. Martindale paid for and performed all obligations to maintain the Mesa Policies.

29. Champlain and WestCongress are licensed insurance carriers. One or both wrote and issued Policy Number WCCNCGL000012001 to Mr. Martindale and Horizon (the "WestCongress Policy"). Mr. Martindale paid for and performed all obligations to maintain the WestCongress Policy.

30. On April 1, 2017, Mr. Martindale, doing business as Horizon Underpinning, and RAF executed a construction contract, which included an indemnity agreement ("2017 Indemnification Agreement"). The indemnity agreement states that "Horizon shall fully defend, indemnify and hold harmless RAF Development, LLC and its managers, including Glenn Farmer (collectively, 'RAF'), from any and all claims, lawsuits, demands, causes of action, liability, loss, damage and/or injury of any kind whatsoever . . . arising out of, in any way whatsoever, any alleged acts, omissions,

-8-

negligence or willful misconduct on the part of Horizon, its officers, owners, personnel, employees, agents contractors, invitees, or volunteers." A true and correct copy of the 2017 Indemnification Agreement is attached hereto as Exhibit 1 and incorporated herein.

31. On April 7, 2020, Horizon and RAF executed another construction contract, which included a nearly identical indemnity agreement ("2020 Indemnification Agreement"). A true and correct copy of the 2020 Indemnification Agreement is attached hereto as Exhibit 2 and incorporated herein.

32. On September 4, 2023, Horizon, RAF, and Mr. Farmer were sued in the LASC Action. A motion to compel arbitration was granted on May 1, 2024, and the Superior Court case was stayed pending the Arbitration.

33. The allegations of the *Thursby-Palmer* Action include that Mr. Martindale's underpinning, engineering, and related site and retaining wall work were faulty and, in part, unpermitted, leading to failures and City code issues. The alleged underpinning and engineering work was done by Mr. Martindale while doing business as Horizon Underpinning. This is precisely the type of engineering and underpinning liability exposure that Mr. Martindale's insurance policies were intended to address.

34. In 2020, RAF retained Horizon to perform engineering, underpinning, grading, and related site and work at a residential property located at the Mission Viejo Property.

35. The purchasers of the Mission Viejo Property, years after the sale, brought a separate petition to compel arbitration and arbitration against RAF styled as the *Nemeroff* Action. The *Nemeroff* Action expressly involves claims against Horizon.

36. On or about May 9, 2024, and thereafter, Mr. Martindale, individually and on behalf of Horizon, RAF and Farmer, tendered the *Nemeroff* Action and the *Thursby-Palmer* Action to Mesa, which was potentially operating on behalf of Selective.

37. On or about May 24, 2024 and on or about October 7, 2024, and thereafter, Horizon tendered the *Nemeroff* Action and the *Thursby-Palmer* Action to WestCongress, which was potentially operating on behalf of Champlain. Horizon's tender package included the complaint, arbitration demand, and arbitration invoice.

-9-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

38.    Mr. Martindale's tenders and related communications were made in good faith, supported by third-party claims and arbitration filings, and accompanied by cooperation and disclosures.    The tenders sought only the coverage expressly contemplated by the Mesa and WestCongress Policies.

39.    By October 18, 2024, Musick Peeler, coverage counsel for Mesa, and potentially coverage counsel for Selective, sent John Martindale and Horizon a letter denying coverage for the *Nemeroff* Action and the *Thursby-Palmer* Action.

40.    John Martindale, Horizon, RAF, and Farmer were thus left barren by Selective and Mesa, with defense fees and costs personally incurred by the insureds.

41.    For nearly a year, Champlain and WestCongress did not accept coverage, and John Martindale, Horizon, RAF, and Farmer were thus left barren by Champlain and WestCongress, with defense fees and costs personally incurred by the insureds.    Nearly a year after the tenders, WestCongress, potentially on behalf of Champlain, appointed defense counsel, Ropers Majeski, but Ropers Majeski first failed to appear in the *Nemeroff* Action and the *Thursby-Palmer* Action.

42.    Despite repeated requests, Champlain and WestCongress's appointed counsel failed to appear in the related proceedings for over a year, failed to respond to pleadings and discovery, failed to pay required JAMS fees, and refused to appoint unconflicted counsel and improperly demanded a conflict waiver from John Martindale, Horizon, and Farmer to even appear thereby jeopardizing Mr. Martindale with default exposure and causing damages.

43.    Indeed, the arbitrators, the Honorable David A. Thompson (Retired) and the Honorable Gail Andler (Retired) of JAMS, requested appearances be made for Horizon/Martindale, yet no defense was provided, and costs/fees remained unpaid.

44.    Defendants wrongfully denied coverage for the *Nemeroff* Action and the *Thursby-Palmer* Action and then refused to properly defend and indemnify Mr. Martindale, Horizon, Mr. Farmer, and RAF, causing Plaintiffs additional monetary damages.

45.    Defendants never properly indemnified or defended the *Nemeroff* Action and the *Thursby-Palmer* Action, causing damages to Mr. Martindale and/or Horizon, and leaving them exposed to future damages.

-10-

46.     Defendants also never properly reimbursed Mr. Martindale and/or Horizon for the defense fees and costs incurred in *Nemeroff* Action and the *Thursby-Palmer* Action, which are ongoing, thus causing further damages to Mr. Martindale and/or Horizon, including resultant damages from loss of use of funds.

47.     Thus, punitive damages are appropriate to cease such willful, malicious, and outrageous misconduct as targeting an individual and someone who paid for insurance, for an agenda that is directly against the named insured, the named insured's indemnitees, and upstream vicarious insureds, to gain advantage and damage Plaintiffs.  Defendants must be punished.

## FIRST CAUSE OF ACTION

### (Breach of Contract -- Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)

48.     Plaintiffs incorporate by reference the previous allegations of this Complaint as though fully set forth herein.

49.     Selective and/or and Mesa wrote and issued the Mesa Policies to Mr. Martindale.

50.     Champlain and/or WestCongress wrote and issued the WestCongress Policy to Mr. Martindale.

51.     Mr. Martindale paid for and performed all obligations to maintain the Mesa Policies and WestCongress Policy.

52.     Horizon, as Mr. Martindale's successor business entity, is an additional insured and/or third-party beneficiary.

53.     Selective and Mesa breached the Mesa Policies by acting as alleged above, including but not limited to:

    a) Failing to timely accept coverage of the *Thursby-Palmer* Action and the *Nemeroff* Action;

    b) Refusing to defend despite the duty to defend attaching on tender and extending to mixed claims;

    c) Repudiating and refusing to indemnify after Mr. Martindale and Horizon's tenders showed potential coverage for claims arising out of Mr. Martindale's

-11-

underpinning and engineering work within the Mesa Policy periods and out of vicarious insured pathways for RAF and Mr. Farmer;

d) Refusing to reimburse Mr. Martindale and Horizon defense fees and costs incurred, including, but not limited to, during the timeframes the insureds were left barren;

e) Failing to appoint independent *Cumis* counsel; and

f) Failing to provide coverage or indemnify Mr. Farmer and RAF despite the 2017 and 2020 Indemnification Agreements between the insureds and RAF.

54. Champlain and WestCongress has breached the WestCongress Policy by acting as alleged above, including but not limited to:

a) Failing to timely accept coverage of the *Nemeroff* Action and the *Thursby-Palmer* Action;

b) Failing to mount and fund a defense for Mr. Martindale doing business as Horizon and other defendants in the *Nemeroff* Action and the *Thursby-Palmer* Action despite the duty to defend attaching on tender and extending to mixed claims;

c) Repudiating and refusing to indemnify after Mr. Martindale and Horizon's tenders showed potential coverage for claims arising out of Mr. Martindale's underpinning and engineering work within the WestCongress Policy periods and out of vicarious insured pathways for RAF and Mr. Farmer;

d) Refusing to reimburse Mr. Martindale and Horizon defense fees and costs incurred, including, but not limited to, during the timeframes the insureds were left barren;

e) Assigning defense counsel who never appeared despite requests from the arbitrator to do so and then having said defense counsel demand an improper conflict waiver;

f) Failing to appoint independent *Cumis* counsel; and

-12-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

g) Failing to provide coverage or indemnify Mr. Farmer and RAF despite the 2017 and 2020 Indemnification Agreements between the insureds and RAF.

55.    As a direct and proximate result of Selective, Mesa, Champlain, and WestCongress's breaches, Plaintiffs have sustained, and will continue to sustain, damages including defense fees/costs incurred, including reasonable investigation and arbitration-related fees, consequential damages proximately caused by the breaches, loss of use of funds, among other damages in an amount to be proven at trial.

56.    Defendants' breaches were the cause and/or substantial cause of all of Plaintiffs' damages stated herein.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing -- Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)**

57.    Plaintiffs incorporate by reference the previous allegations of this Complaint as though fully set forth herein.

58.    In every contract or agreement, there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another.

59.    Implied in the Mesa Policies and WestCongress Policy is a covenant that Defendants would act in good faith and deal fairly with Mr. Martindale and Horizon as Mr. Martindale's business, that Selective, Mesa, Champlain, and WestCongress would do nothing to interfere with the rights of Mr. Martindale and Horizon to receive the benefits due under the Policies, and that Selective, Mesa, Champlain, and WestCongress would give at least the same level of consideration to Mr. Martindale and Horizon's interests as it gives its own interests.

60.    Instead of complying with these duties, Selective, Mesa, Champlain, and WestCongress acted in bad faith by, among other things:

a) Unreasonably withholding and obstructing defense obligations arising on tender;

-13-

b) Ignoring facts supporting coverage related to a litigation arising from and directly involving Mr. Martindale's and/or Horizon's engineering, contracting, underpinning, and/or support work;

c) Appointing conflicted counsel who have worked against the interests of the insureds;

d) Failing to affirm the right to *Cumis* counsel; and

e) Misrepresenting the dates of conduct and scope of coverage to minimize their obligations irrespective of the vicarious insured's exposure.

61.    Champlain and WestCongress, particularly acted in bad faith by purportedly appointing counsel who then tried in bad faith to force an improper conflict waiver upon Martindale, Horizon, and Farmer, while refusing to appear in the *Nemeroff* Action and the *Thursby-Palmer* Action, failed to respond to pleadings and discovery, and failed to pay arbitration fees, constituting a constructive refusal and breach of the covenant which requires an insurer to provide and fund competent, good-faith defense upon insurer undertaking the defense.

62.    Selective and Mesa, particularly acted in bad faith by utterly ignoring its obligations in the *Thursby-Palmer* Action for almost two (2) years.

63.    In breach of the implied covenant of good faith and fair dealing, Selective, Mesa, Champlain, and WestCongress committed the acts alleged above for the purpose of knowingly withholding from Mr. Martindale and Horizon the rights and benefits to which they are and were entitled under the Policies.

64.    Selective, Mesa, Champlain, and WestCongress's acts are inconsistent with the reasonable expectations of Mr. Martindale, are contrary to established industry custom and practice, are contrary to the express and implied terms of the Mesa Policies and WestCongress Policy and constitute bad faith.

65.    RAF and Mr. Farmer are exposed by the prejudicial conduct of Defendants to continued claims by plaintiffs in the *Nemeroff* Action and the *Thursby-Palmer* Action regarding Mr. Martindale's and/or Horizon's engineering, construction, underpinning and/or support work done

-14-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

while the Mesa Policies and WestCongress Policy were active, as confirmed by the 2017 and 2020 Indemnification Agreements.

66. Mr. Martindale and Horizon are further informed and believe, and on that basis allege, that Selective, Mesa, Champlain, and WestCongress, acting through one or more of their officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Selective, Mesa, Champlain, and WestCongress's businesses, performed, authorized, and/or ratified the bad faith conduct alleged above.

67. Selective, Mesa, Champlain, and WestCongress's conduct is contemptible and has been done with a conscious disregard of the insured's and vicarious insured's rights and Selective, Mesa, Champlain, and WestCongress's obligations to defend and indemnify, constituting oppression, and/or malice.

68. Plaintiffs' damages include defense costs, additional litigation expenses, exposure to defaults in arbitration, lost opportunities for mediation/settlement, and consequential damages proximately caused by Defendants' breaches.

69. As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Mr. Martindale and Horizon have incurred significant attorneys' fees. Pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, Mr. Martindale and Horizon are entitled to recover all attorneys' fees that they reasonably incurred, and continue to incur, in their efforts to obtain the benefits due under the Mesa Policies and Defendants, have wrongfully withheld, and are withholding, in bad faith. The Plaintiffs are also entitled to interest thereon at the maximum legal rate.

70. Mr. Martindale and Horizon continue to suffer damages because of Defendants' bad faith and the full extent of the damages is well in excess of One Hundred Thousand Dollars ($100,000).

71. Defendants ignored Mr. Martindale and Horizon's interests and concerns and RAF and Mr. Farmer's exposure due to Mr. Martindale's engineering and underpinning work with the requisite intent to injure within the meaning of California Civil Code section 3294. As a result, Plaintiffs have incurred uncertainty and significant legal expenses defending themselves in relation

-15-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

to the *Thursby-Palmer* Action and *Nemeroff* Action. Therefore, Plaintiffs are entitled to recover punitive damages from Defendants in an amount sufficient to punish and make an example of Defendants and to deter similar conduct in the future.

<u>**THIRD CAUSE OF ACTION**</u>

**(Promissory Estoppel -- Plaintiffs Against Defendants Champlain, WestCongress, and DOES 1 through 100, inclusive)**

72.     Plaintiffs incorporate by reference the previous allegations of this Complaint as though fully set forth herein.

73.     This cause of action is pleaded in the alternative, only in the event the Court determines no enforceable contractual duty to defend exists as to Plaintiffs under the WestCongress Policy.

74.     WestCongress, potentially on behalf of Champlain, promised Mr. Martindale and Horizon that they engaged independent counsel, Ropers Majeski.

75.     Mr. Martindale and Horizon reasonably and foreseeably relied and incurred defense fees and costs and proceeded forward, with the expectation of independent counsel's involvement and timely and full payment by Champlain and WestCongress.

76.     However, Champlain and WestCongress, refused to honor its agreement.

77.     Champlain and WestCongress, knew that Mr. Martindale and Horizon would reasonably and foreseeably rely upon the numerous promises and reassurances that independent counsel would defend and defense fees and costs would be paid, even after the parties in the *Thursby-Palmer* Action directly confronted Defendants with potential breaches of contract. Therefore, these promises were in addition, and separate and apart, from any claimed breach of written contract.

78.     It would be a significant injustice if Champlain and WestCongress, are allowed to make representations and promises and have Plaintiffs incur significant fees and costs, while never intending to proceed as promised.

79.     By virtue of the foregoing, Plaintiffs have been damaged in an amount which will be proven at the time of trial and which is believed to be well in excess of One Hundred Thousand Dollars ($100,000), plus loss of use of funds, costs, and interest thereupon, as allowable by law.

-16-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

## FOURTH CAUSE OF ACTION

**(Negligence-- Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)**

80.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

81.    Defendants owed Plaintiffs a duty of reasonable care arising from Defendants' contractual and statutory obligations in claims-handling and defense and arising from WestCongress, potentially on behalf of Champlain, voluntarily undertaking to defend by appointing counsel.

82.    An insurer that undertakes a defense must do so competently and in good faith.

83.    Champlain and WestCongress, had coverage counsel claim they were somehow defense counsel leaving Plaintiffs exposed for allegations related to conduct by Mr. Martindale and Horizon, thus causing liability pursuant to *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 84.

84.    WestCongress, potentially on behalf of Champlain, identified Ropers Majeski as defense counsel for Horizon.  Despite this designation, Ropers Majeski did not enter appearances in the *Nemeroff* Action and the *Thursby-Palmer* Action, demanded improper conflict waivers, and failed to conduct defense tasks notwithstanding the arbitrator's direction to appear.

85.    Champlain and WestCongress, by engaging in these activities, created a duty to Mr. Martindale and Horizon.

86.    Champlain and WestCongress acted negligently and breached their duties by:

    a)  causing or permitting appointed defense counsel to fail to appear in the *Nemeroff* Action and the *Thursby-Palmer* Action;

    b)  failing to respond to pleadings and discovery;

    c)  failing to appoint independent *Cumis* counsel; and

    d)  failing to fund required arbitration fees, despite arbitrator direction to appear.

87.    Champlain and WestCongress's negligent and unreasonable conduct foreseeably and proximately caused harm to Plaintiffs, including but not limited to unreimbursed defense costs, exposure to liability, loss of contractual insurance benefits, and other economic damage.

-17-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

88. Selective and Mesa, owed Plaintiffs duties to promptly, thoroughly, and fairly investigate Plaintiffs' tender, to consider all facts known or reasonably discoverable demonstrating at least a potential for coverage, to construe any doubt regarding coverage in favor of Plaintiffs, and to provide or contribute to a defense upon the existence of any such potential coverage.

89. Selective and Mesa, acted negligently and breached their duties by, among other things:

    a) failing to conduct a full, fair, and objective investigation of Plaintiffs' tender and coverage claim;

    b) failing to consider or deliberately disregarding extrinsic facts demonstrating at least a potential for coverage, including Mr. Martindale's insured 2017 work performed while doing business as Horizon;

    c) wrongfully denying or delaying a defense despite the existence of a potential for coverage;

    d) failing to appoint independent *Cumis* counsel; and

    e) refusing to coordinate, fund, or contribute to a competent defense of Plaintiffs.

90. Selective and Mesa's negligent and unreasonable conduct foreseeably and proximately caused harm to Plaintiffs, including but not limited to unreimbursed defense costs, exposure to liability, loss of contractual insurance benefits, and other economic damage.

91. By virtue of the foregoing, Mr. Martindale and Horizon have been damaged in an amount which will be proven at the time of trial and which is believed to be well in excess of One Hundred Thousand Dollars ($100,000), plus loss of use of funds, costs, and interest thereupon, as allowable by law.

## FIFTH CAUSE OF ACTION

**(Negligent Misrepresentation -- Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)**

92. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

-18-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

93. Defendants, in the course of claims-handling and purported defense, made representations of past or existing material facts without reasonable grounds for believing them true, intending Plaintiffs to rely, including:

a) WestCongress's misrepresentation, potentially on behalf of Champlain, that non-conflicted defense counsel had been appointed and would appear and defend;

b) Mesa's misrepresentation, potentially on behalf of Selective, that it owed no duty for the *Thursby-Palmer* Action (despite the allegations occurring directly during its policy periods), as well as the coverage for Horizon, RAF, and Mr. Farmer despite contrary extrinsic facts and legal obligations; and

c) that policy-period timing eliminated any defense obligation notwithstanding allegations of Mr. Martindale's work in 2017 doing business as Horizon Underpinning.

94. Defendants did not have reasonable grounds for believing these representations were true.

95. Defendants made these representations with the intent to induce Plaintiffs' reliance on the facts being represented.

96. Plaintiffs justifiably relied on these representations by, among other things, refraining from immediately retaining independent counsel at their own expense in the expectation Defendants would appear and fund the defense, and by forgoing alternative protective measures while Defendants insisted on nonappearance and conflict waivers.

97. Plaintiffs incurred defense fees and costs with the expectation of timely and full payment by Defendants.

98. Defendants' negligent misrepresentations were a substantial factor in causing Plaintiffs' damages, including defense costs, arbitration fees, default exposure, and consequential losses.

99. By virtue of the foregoing, Plaintiffs have been damaged in an amount which will be proven at the time of trial and which is believed to be well in excess of One Hundred Thousand Dollars ($100,000), plus loss of use of funds, costs, and interest thereupon, as allowable by law.

-19-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

## SIXTH CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200, *et seq.*, Unfair Competition Law ("UCL") – Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)**

100.    Plaintiffs incorporate by reference the previous allegations of this Complaint as though fully set forth herein.

101.    California Business and Professions Code § 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." An act is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

102.    Mesa, potentially on behalf of Selective, engaged in unfair business practices by refusing to defend and indemnify.

103.    WestCongress, potentially on behalf of Champlain, engaged in unfair business practices by appointing non-appearing counsel.

104.    As a direct result of Defendants' actions, Mr. Martindale and Horizon have been injured and incurred direct financial losses, including defense costs, arbitration fees, and exposure to default in the arbitration, notwithstanding Mr. Martindale's payment of all premiums and performance of all obligations required to maintain the Mesa Policies and the WestCongress Policy.

105.    Plaintiffs seek restitution and injunctive relief, and such other equitable relief as this Court deems appropriate.

## SEVENTH CAUSE OF ACTION

**(Declaratory Relief – Plaintiffs Against Defendants Selective, Mesa, Champlain, WestCongress, and DOES 1 through 100, inclusive)**

106.    Plaintiffs incorporate by reference the previous allegations of this Complaint as though fully set forth herein.

107.    Plaintiffs are entitled to a declaration that Selective, Mesa, Champlain, and WestCongress, owe, and at all relevant times owed, an immediate and ongoing duty to defend them in the *Nemeroff* Action and/or the *Thursby-Palmer* Action.

-20-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

108.    Mr. Martindale and Horizon are entitled to a declaration that the duty to defend was triggered upon tender because the pleadings and extrinsic facts reflect at least a potential for coverage arising from Mr. Martindale's underpinning/engineering operations performed while doing business as Horizon, including work performed in 2017; that duty requires a full defense of the entire action, even if mixed with uncovered claims.

109.    Mr. Martindale and Horizon are entitled to a declaration that Selective and Mesa's policy-period argument (policies ending 2017 vs. later manifestation of alleged damage in 2022–2023) does not defeat the defense obligation where there is a potential that the property damage originated from operations during Selective and Mesa's policy periods; once triggered, the duty extends to the entire action.

110.    Mr. Martindale and Horizon are entitled to a declaration that coverage is not defeated by "contract-only" characterizations of the underlying claims or indemnity demands; insurance coverage turns on the nature of the risk and injury (property damage) and the policy language, and "legally obligated to pay as damages" is not limited to tort liability.

111.    Mr. Martindale and Horizon are entitled to a declaration that Mr. Martindale (formerly dba Horizon Underpinning) agreed to and is bound by an express indemnification and defense obligation in favor of RAF and Mr. Farmer for claims "arising out of" or "resulting from" Mr. Martindale's/Horizon's work at the subject property, and that the duty to defend RAF and Mr. Farmer arose upon tender pursuant to express contractual indemnity and Civil Code § 2778.

112.    Mr. Martindale and Horizon are entitled to a declaration that their contractual defense and indemnity obligations to RAF and Mr. Farmer constitute a covered claim under the Mesa and WestCongress policies to the extent the obligations arise from "property damage" caused by Mr. Martindale's and Horizon's operations; "legally obligated to pay as damages" encompasses such contractual indemnity for the *Nemeroff* Action and the *Thursby-Palmer* Action.  See *Vandenberg*, supra, 21 Cal.4th at 840; *Hanover Ins. Co.*, supra, 237 F. Supp. 3d 925.

113.    Mr. Martindale and Horizon are entitled to a declaration that RAF and Mr. Farmer qualify for a defense as additional/vicarious insureds "legally responsible" for Mr.

-21-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

Martindale's/Horizon's acts or omissions, obligating the insurers to defend the entire action as to such upstream parties.

114.    Mr. Martindale and Horizon are entitled to a declaration that Champlain, WestCongress, Selective, and Mesa, must fund a competent, conflict-free defense, including court and arbitration appearances, responses to pleadings and discovery, payment of arbitration fees, and reasonable investigation/expert costs, and, where reservation-created or ethical conflicts exist, must provide independent counsel pursuant to Civil Code § 2860.

115.    Mr. Martindale and Horizon are entitled to a declaration that Defendants' reliance on narrow "insured status" and corporate-form arguments (*e.g.*, Horizon's LLC formation date) does not defeat the duty to defend where extrinsic facts show potential coverage tied to Mr. Martindale's operations doing business as Horizon Underpinning and to omnibus/additional insured provisions extending to organizations legally responsible for the named insured's conduct.

116.    Plaintiffs are informed and believe, and on that basis allege, that Defendants dispute the foregoing contentions and duties.

117.    Therefore, an actual and justiciable controversy exists, and Mr. Martindale and Horizon seek a judicial declaration consistent with the foregoing, including that: (a) their losses and obligations, both to the Thursby-Palmer claimants and under the express indemnity owed to RAF and Mr. Farmer, are insured to the extent they involve covered "property damage" caused by their operations; (b) Defendants must immediately provide and fund a full, conflict-free defense; and (c) Defendants must indemnify Mr. Martindale and Horizon for any sums they are legally obligated to pay as damages consistent with the policies and California law.

118.    A declaration is necessary at this time in order that the parties' dispute may be resolved and that they may be aware of their prospective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor for the following relief:

1.    For damages in an amount to be proven at trial for all losses and damages caused by the conduct of Defendants, including, but not limited to compensatory, consequential, and loss of use damages;

-22-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

2.    For damages, including reasonable attorneys' fees and costs, plus interest;

3.    For punitive damages in an amount to be proven at trial for Defendants' willful and malicious conduct;

4.    For pre-judgment and post-judgment interest in the maximum amounts provided by law;

5.    For restitution and injunctive relief;

6.    For all legal and appropriate equitable relief;

7.    For a declaration consistent with Plaintiffs' contentions regarding Plaintiffs' rights and Defendants' obligations as alleged herein; and,

8.    For other relief as this Court deems just and appropriate under the circumstances.

Dated: April 7, 2026                                    RASHTIAN LAW GROUP, APC

Siavash Daniel Rashtian, Esq.
Saleem K. Erakat, Esq.
Attorneys for Plaintiffs JOHN MARTINDALE, FORMERLY DBA "HORIZON UNDERPINNING," AND HORIZON UNDERPINNING, LLC

-23-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all legal matters contained in this Complaint.

Dated: April 7, 2026

RASHTIAN LAW GROUP, APC

Siavash Daniel Rashtian, Esq.
Saleem K. Erakat, Esq.
Attorneys for Plaintiffs JOHN MARTINDALE, FORMERLY DBA "HORIZON UNDERPINNING," AND HORIZON UNDERPINNING, LLC

-24-

JOHN MARTINDALE AND HORIZON UNDERPINNING LLC'S COMPLAINT

# EXHIBIT 1

California Contractor #798014                                   Project Number

## HORIZON UNDERPINNING

### CONSTRUCTION CONTRACT

This Construction Contract is made in Orange County, California, by and between Horizon Underpinning, a dba of John Martindale, hereinafter referred to as "Contractor", with offices at 25401 Alicia Pkwy., #L421, Laguna Hills, CA 92653, and the Individual(s)/Entity(ies) identified below, hereinafter referred to as "Client":

CLIENT(S):    RAF Development, LLC
ADDRESS:      21166 Placerita Canyon Rd., Santa Clarita, CA 91321
PHONE NO.: 949-295-0623
JOBSITE:      All

Contractors are required by law to be licensed and regulated by the Contractor's State License Board which has jurisdiction to investigate complaints against contractors if a complaint is filed within three years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractor's State License Board, P. 0. Box 26000, Sacramento, CA 95826.

### TERMS AND CONDITIONS

1.    PLANS AND SPECIFCATIONS: "Contractor" hereby agrees to furnish all services material, labor, tools, equipment, and other items required to undertake and complete all work at the Jobsite required by the Plans and Specifications (attached as "Addendum A") and the General Conditions
(attached as "Addendum B-1 schedule A & B"). All referenced addenda shall be initialed by "Buyer" and shall form a part of this Construction Contract.

2.    PAYMENT OBLIGATION: In consideration of the covenants and agreements set forth in this Construction Contract being substantially performed and kept by "Contractor", "Buyer" hereby agrees to pay "Contractor" (or designee) the total sum of $58,000 payable in installments or further amounts as agreed by the Parties. In accordance with the "Payment Schedule Addendum".
Payment is from_XX_ Buyer funds (cash) or from_ Insurance funds. In the event "Buyer" fails to make timely payment as set forth above, "Contractor" shall have no obligation to perform further work in accordance with this Construction Contract and shall have the right to immediately cease any work in progress without further notice to Buyer. Contractor shall provide notice of completion for each phase of work for which contractor is seeking payment. Owner shall pay contractor within 3 days after receipt of such notice. Payments identified above may come due at any time and are not necessarily in consecutive order. In the event bank financing is indicated, this Construction Contract shall be incorporated into the financing agreement and all dates, terms, and conditions herein shall be subject to the dates, terms, and conditions of the financing agreement. If payments are not made within the seven days from receipt of invoice, the amount is subject to a 1.5% fee per month.
3.    COMMENCEMENT AND COMPLETION OF WORK: "Contractor" shall commence work on or before _15_ days after permit approval and shall substantially complete construction within _30_ business days from commencement date ("business days" being defined as other than Saturdays, Sundays and State/National holidays). Substantial commencement of work shall be defined as commencement of excavation work. The work shall be deemed substantially complete when "Contractor" has finished all work called for by the Construction Contract and the work is ready to be used and occupied by "Buyer", even though minor items may remain to be installed, finished, or corrected provided such minor items do not have any appreciable effect on the ability of "Buyer" to utilize the work for its intended purpose.

RAF000498

California Contractor #798041                                   Project Number

4.      CONSTRUCTION CONTRACT DOCUMENTS: The following attached documents are incorporated herein by reference and constitute a part of this Construction Contract:

XX_ Addendum A-1 (Plans/Specifications)    XX Notice To Owner
XX_ Addendum B-1 (Scope of work)           XX Notice of Cancellation
XX_ Addendum B-2 (General Conditions)      XX Payment Schedule Addendum
XX_ Addendum B-3 (Indemnity Agreement)

THIS CONSTRUCTION CONTRACT CONSTITUTES THE ENTIRE AGREEMENT OF THE PARTIES, AND NO WRITTEN OR ORAL COMMUNICATION BETWEEN "CONTRACTOR" AND "BUYER" BEFORE THE TIME OF EXECUTION OF THIS CONSTRUCTION CONTRACTSHALL BE CONSID-ERED TO ENLARGE, MODIFY OR EXPLAIN THE TERMS OF THE CONSTRUCTION CONTRACT.

Buyer                                           Date   4/1/2017

                              , managing member

Contractor

Date    4-1-17

CONTRACTOR'S STATEMENT TO BUYER. PLEASE READ AND SIGN.

"BUYER" UNDERSTANDS THE FACT THAT THERE ARE POTENTIAL "INHERENT DANGERS" IN THE USE OF ANY CONSTRUCTION. "BUYER" PLEASE BE AWARE THAT OUR INTENTION IS TO CONSTRUCT YOUR PROJECT WITH AS MANY "REALISTIC" SAFEGUARDS AS POSSIBLE. "BUYER" SHOULD USE THE PRODUCT AS SAFELY AS POSSIBLE AND STAY WITHIN THE BOUNDARIES OF RESPONSIBLE USAGE. PLEASE USE THE ELEMENTS AS THEY WERE INITIALLY INTENDED. PLEASE EXERCISE APPROPRIATE CAUTIONS WHEN ENJOYING THE WORK! WE HOPE THAT YOU ENJOY THE PROJECT FOR MANY YEARS TO COME.

Buyer                                           Date

CONTRACTOR WRITTEN AUTHORIZATION REQUIRED PRIOR TO ACCEPTANCE

                                                4/1/17

Contractor                                      Date

YOU, THE "BUYER", HAVE THE RIGHT TO REQUIRE A PERFORMANCE AND PAYMENT BOND. IF YOU ARE INTERESTED IN OBTAINING A BOND, PLEASE ASK YOUR "CONTRACTOR"/REPRE-SENTATIVE FOR DETAILS.

YOU, THE "BUYER", MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DAY OF THIS TRANSACTION. SEE THE ATTACHED "NOTICE OF CANCELLATION" FORM FOR AN EXPLANATION OF TIDS RIGHT. "BUYER'S" SIGNATURE ACKNOWLEDGES THAT "BUYER" RECEIVED THE ATTACHED "NOTICE OF CANCELLATION" AND "NOTICE TO OWNER" FORMS. "BUYER" ALSO ACKNOWLEDGES THAT "BUYER" HAS BEEN ADVISED VERBALLY OF "BUYER'S" RIGHT TO CANCEL THIS CONTRACT ONOR BEFORE MIDNIGHT OF

Buyer

RAF000499

California Contractor #798014                                    Project Number
## GENERAL CONDITIONS

Addendum B-2

**A.     PERFORMANCE BY "CONTRACTOR":** "Contractor" shall perform all work required by the Construction Contract in a good and workmanlike manner and in conformity to industry standards. "Buyer" understands that any plans or scale drawings are merely descriptive of the specifications. Should there be any variance, inconsistency, or other conflict between the plans, drawings and specifications, the specifications shall take precedence.

**B.     DELAYS:** Delays in work (if any) beyond the control of "Contractor", including, but not limited to, act of God, fire, flood, inclement weather, strikes, boycotts, unavailability of materials, government prohibition or like obstructive actions, and changes to the Construction Contract by "Buyer" or non-payment or other delay or interference by "Buyer" (or other contractors engaged by "Buyer"), shall extend the date of completion proportionately. Failure of "Contractor", without lawful excuse, to substantially commence work within twenty (20) days from the approximate date specified in the Construction Contract when work will begin is a violation of the Contractor's State License Law.

**C.     MODIFICATION OF WORK:** No work other than as set forth in this Construction Contract shall be done by "Contractor" without prior authorization of "Buyer". "Buyer", in consultation with "Contractor", may request additional work by written change order. Any change order shall set forth the requested change(s) in construction and the resulting price adjustment and shall, upon execution by "Contractor" and "Buyer", become a part of this Construction Contract. Payment for any additional work is due and payable upon completion. "Contractor" reserves the right to use substitute and equivalent equipment or material in the event any specified equipment or material becomes unavailable. Subject to owners approval.

**D.     REPRESENTATION AND DUTIES OF "BUYER":** "Buyer" agrees to make all payments called for by this Construction Contract on time and without set-off or withholding for any scheduled repairs to completed work. Upon satisfactory payment being made for any portion of the work performed, "Contractor" shall, prior to any further payment being made, furnish "Buyer" an unconditional release from any claim or Mechanic's Lien pursuant to Section 3114 of the Civil Code, for that portion of the work for which payment has been made. Lien releases will not be issued when a Performance and Payment Bond has been provided. "Buyer" hereby authorizes "Contractor" to make such investigation of "Buyer's" credit as "Contractor", in its discretion, deems necessary.

"Buyer" warrants and agrees that "Contractor" shall be provided reasonable access to the Jobsite and that such access (whether across "Buyer's" property or adjacent property owned by others) shall be provided at no cost and liability to "Contractor". "Buyer" agrees to remove or relocate fencing, underground utilities and piping, rocks or other obstructions which impede normal access to the Jobsite or which impede the work of construction. This information shall be provided to Owner prior to commencement of any work in the form of a memo.

Contractor shall secure and "Buyer shall" pay for all building permits and variances, and contractor shall obtain any necessary approval(s) from governmental or governing entities (e.g., homeowner associations) for execution of the project as described in the plans and specifications. "Buyer" is responsible for security of property during non-business hours. Contractors shall abide by all association rules and regulations.

**E.     DEFAULT:** In the event of "either parties" default of any provision of this Construction Contract, "The defaulting party" agrees to pay all costs of collection, including attorney's fees, from the date of default. In the event of default, "Buyer" grants to "Contractor" the right, without further notice to "Buyer", to pass over "Buyer's" property in order to repossess any material and equipment owned or installed by "Contractor". Any failure of "either party" to exercise any right under this Construction Contract, or to insist upon strict compliance by , shall not constitute a waiver of "The defaulting party" right to subsequently demand exact compliance of all terms and conditions.

**F.     CONCEALED CONDITIONS:** If "Contractor" encounters underground or concealed conditions that were unknown to "Contractor" before execution of this Construction Contract and that could not have reasonably have been anticipated, "Contractor" shall stop work until such time as "Contractor" and "Buyer" have reached an agreement as to equitable compensation to be paid to "Contractor" for dealing with such condition. Also the signer of this contract has the legal right to accept the liability of this contract or has written permission to accept on the owners behalf. The signer of the contract also has written permission from any owner, city agency, public utility or any property that he will or has encroached upon. With or with out knowledge, from the contractor. Owner shall be responsible for repairing any damage to underground utilities.

**G.     DESTRUCTION OF THE WORK:** If more than fifty percent (50%) of the value of the work accomplished by "Contractor" should be damaged or destroyed by fire, floo4, earthquake, or other event that is not the fault of the "Contractor", then the obligations of the parties under this Construction Contract shall terminate when "Buyer" has paid "Contractor" the value of the work accomplished based on its percentage of completion, and "Contractor" shall be under no obligation to rebuild.

Page 3 of 6

RAF000500

California Contractor #798014                                                Project Number

**H.    INTERPRETATION:** Captions or heading of the paragraphs of this Construction Contract are solely for the convenience of the parties and shall not be deemed to limit or define any provision of this Construction Contract. Should any provision of this Construction Contract be declared invalid, such provision shall not invalidate the remainder of this Construction Contract and the remainder of this Construction Contract shall be enforceable as if the invalid portion had been eliminated. This Construction Contract shall not be construed as if prepared by one of the parties, but rather as if both parties had prepared the same.

**L.    SUCCESSORS AND ASSIGNS:** This Construction Contract shall be jointly and severally binding on "Buyer" and shall be binding on "Buyer's" heirs and representatives. This Construction Contract shall inure to the benefit of "Contractor", its successors and assigns.

**J.    GENERAL:** ALL WARRANTIES SHALL ONLY BECOME EFFECTIVE UPON RECEIPT OF ALL PAYMENTS DUE UNDER THIS CONSTRUCTION CONTRACT. "CONTRACTOR" WARRANTS THAT ALL MATERIALS, FACILITIES, WORK, AND EQUIPMENT WILL BE FREE OF DEFECTS AND WILL OPERATE PROPERLY FOR TWENTY FIVE YEARS AFTER SUBSTANTIAL COMPLETION OF THE PROJECT. "CONTRACTOR" WILL ASSEMBLE AND TRANSMIT TO "BUYER"
THE GUARANTEES AND OPERATING INSTRUCTIONS OF ALL SUPPLIERS, SUBCONTRACTORS AND MATERIAL-MEN. "CONTRACTOR" WILL, AT ITS OWN EXPENSE, REPAIR OR REPLACE ANY ITEM FOUND TO BE DEFECTIVE WITHIN TEN YEARS AFTER SUBSTANTIAL COMPLETION, UNLESS DIFFERENT TERMS ARE REQUIRED BY LOCAL JURISDICTION OR EXTENDED PRODUCT WARRANTIES ARE PROVIDED BY SPECIFIC MANUFACTURERS.

**EFFLORESCENCE** (Leaching of Salts - leaving a white salty buildup over time): EFFLORESCENCE IS A COMMON PROBLEM WITH ANY CONCRETE PRODUCT SUBJECTED TO WATER SUBMERSION OR ACTIVITY. HORIZON GOES TO GREAT LENGTHS WITH THE CONCRETE ADDITIVES THAT WE USE TO CUT DOWN AND, HOPEFULLY IN TIME, ELIMINATE THIS EFFECT ALL TOGETHER. HOWEVER, EFFLORESCENCE MAINTENANCE IS NOT COVERED IN THE POST CONSTRUCTION YEARS.
**PLANT OR VEGETATION MATERIAL:** NOT COVERED, HORIZON HAS NO WARRANTIES FOR COSMEDIC REPAIR.

---

## INDEMNITY AGREEMENT          Addendum B-3

This INDEMNITY AGREEMENT (this "Agreement") is made effective on the date written above by and between RAF Development, LLC, and Horizon Underpinning and its successors, hereinafter referred to as "Horizon" are sometimes individually referred to as "Party" and sometimes collectively referred to as the "Parties".

Whereas Horizon will be performing the services outlined in the Scope of Work (along with all attached addenda) referenced above and incorporated herein by reference; and

Whereas, in exchange for valuable consideration Horizon desires to defend and indemnify RAF from any claims and/or litigation arising out of Horizon's performance of the work of providing these services.

Now Therefore, in consideration of the mutual covenants and conditions contained herein, the Parties hereby agree as follows:
TERMS

1.  **Indemnification.** Horizon shall fully defend, indemnify and hold harmless RAF Development, LLC and its managers, including Glenn Farmer (collectively, "RAF"), from any and all claims, lawsuits, demands, causes of action, liability, loss, damage and/or injury of any kind whatsoever (including without limitation all claims for monetary loss, property damage, equitable relief, personal injury and/or wrongful death), whether brought by an individual or other entity, or imposed by a court of law or by administrative action of any federal, state, or local governmental body or agency arising out of, in any way whatsoever, any alleged acts, omissions, negligence or willful misconduct on the part of Horizon, its officers, owners, personnel, employees, agents contractors, invitees, or volunteers. This Indemnification applies to and includes, without limitation, the payment of all penalties, fines, judgements, awards, decrees, attorney's fees, and related costs or expenses and any reimbursements to RAF for all legal fees, expenses, and costs incurred by it.

2.  **Authority to Enter Agreement.** Each Party warrants that the individuals who have signed this Agreement have the actual legal power, right and authority to make this Agreement and bind each respective Party.

3.  **Amendment; Modification.** No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing and signed by both Parties.

RAF000501

California Contractor #798014                                    Project Number

4. **Waiver.** No waiver of any default shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a Party shall give the other Party any contractual right by custom, estoppel, or otherwise.

5. **Attorneys' Fees and Costs.** If any legal action or other proceeding is brought in connection with this Agreement, the successful or prevailing Party, if any, shall be entitled to recover reasonable attorneys' fees and other related costs, in addition to any other relief to which that Party is entitled. In the event that it is the subject of dispute, the court or trier of fact who presides over such legal action or proceeding is empowered to determine which Party, if any, is the prevailing party in accordance with this provision.

6. **Entire Agreement.** This Agreement contains the entire agreement between the Parties related to the matters specified herein, and supersedes any prior oral or written statements or agreements between the Parties related to such matters.

7. **Enforceability, Severability, and Reformation.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited. The intent of the Parties is to provide as broad an indemnification as possible under California law.

8. **Applicable Law.** This Agreement shall be governed exclusively by the laws of the State of California, without regard to conflict of law provisions.

9. **Arbitration.** Should any controversy arise as a result of this transaction, the Parties agree to have the matter arbitrated by and under the rules of the Judicial Arbitration and Mediation Services of Orange County without the necessity of a court order. All rights of discovery allowed by law may be utilized. Any decision shall be final and binding upon all parties.

10. **Signatures.** This Agreement shall be signed on behalf of RAF by Glenn E. Parmer, Managing Member and on behalf of Horizon by John R. Martindale, Managing Member and shall be effective on the date first written above.

**BUYER**                                                        **Horizon Underpinning**

Managing member _____ Date 4/1/2017              John Martindale _____ Date 4/1/17

## NOTICE TO OWNER

Under the California Mechanic's Lien Law, any contractor, subcontractor, laborer, supplier, or other person or entity who helps to improve your property, but is not paid for his or her work or supplies, has a right to place a lien on your home, land, or property where the work was performed and to sue you in court to obtain payment.

This means that after a court hearing, your home, land and property could be sold by a court officer and the proceeds of the sale used to satisfy what you owe. This can happen even if you have paid your contractor in full if the contractor's laborers, or suppliers remain unpaid.

To preserve their rights to file a claim or lien against your property, certain claimants, such as subcontractors or material suppliers, are each required to provide you with a document called a "Preliminary Notice". Contractors and laborers who contract with owners directly do not have to provide such notice since you are aware of their existence as an owner. A "Preliminary Notice" is not a lien against your property if they are not paid. In order to perfect their lien rights, a contractor, subcontractor, supplier, or laborer must file a Mechanic's Lien with the county recorder which then becomes a recorded lien against your property. Generally, the maximum time allowed for filing a Mechanic's Lien against your property is ninety (90) days after substantial completion of your project.

TO INSURE EXTRA PROTECTION FOR YOURSELF AND YOUR PROPERTY, YOU MAY WISH TO TAKE ONE OR MORE OF THE FOLLOWING ACTIONS:

(1) Require that your contractor supply you with a Payment and Performance Bond (not a licensed bond), which provides that the bonding company will either complete the project or pay damages up to the amount of the bond. This Payment and Performance Bond, as well as a copy of the Construction Contract, should be filed with the county recorder for your further protection. The Payment and Performance Bond will usually cost from one (1%) to five (5%) percent of the contract amount depending on the contractor's bonding ability. If a contractor cannot obtain such bonding, it may indicate his or her financial incapacity.

RAF000502

California Contractor #798014                                                    Project Number

(2) Require that payments be made directly to subcontractors and material suppliers through a joint control. Funding services may be available, for a fee, in your area which will establish a voucher or other means of payment to your contractor. These services may also provide you with Lien Waivers and other forms of protection. Any joint control agreement should include the addendum approved by the registrar.

(3) Issue joint checks for payment, made out to both your contractor and subcontractors or material suppliers involved in the project. The joint checks should be made payable to the persons or entities which send preliminary notices to you. Those persons or entities have indicated that they may have lien rights on your property, therefore, you need to protect yourself. This will help to insure that all persons due payment are actually paid.

(4) Upon making payment on any completed phase of the project and before making any further payments, require your contractor to provide you with unconditional "Waiver and Release" forms signed by each material supplier, subcontractor, and laborer involved in that portion of the work for which payment was made. The Statutory Lien Releases are set forth in exact language in Section 3262 of the Civil Code. Most stationary stores will sell the "Waiver and Release" forms if your contractor does not have them. The material suppliers, subcontractors, and laborers that you obtain releases from are those persons or entities who have filed Preliminary Notices with you.

If you are not certain of the material suppliers, subcontractors, and laborers working on your project, you may obtain a list from your contractor. On projects involving improvements to a single-family residence or a duplex owned by individuals, the person signing these releases loses the right to file a Mechanic's Lien claim against your property. In other types of construction, this protection may still be important, but may not be as complete.

To protect yourself under this option, you must be certain that all material suppliers, subcontractors, and laborers have signed the "Waiver and Release" form. If a Mechanic's Lien has been filed against your property, it can only be voluntarily released by a recorded "Release of Mechanic's Lien" signed by the person or entity that filed the Mechanic's Lien against your property, unless the law suit to enforce your lien was not timely filed. You should consult an attorney if a lien is filed against your property.

---

## NOTICE OF CANCELLATION

Date of Transaction: —————————

You may cancel, this transaction, without any penalty or obligation, within three (3) business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within ten (10) days following receipt by the seller of your Cancellation Notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do not make the goods available to the seller and the seller does not pick them up within twenty (20) days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to: "Contractor" located at 25401 Alicia Pkwy., L421, Laguna Hills, CA 92653.

NO LATER THAN MIDNIGHT OF:

I hereby cancel this transaction.

_____          _____
Date                                      "Buyer"

RAF000503

California Contractor #798014                                Project Number

# HORIZON UNDERPINNING

## CONSTRUCTION CONTRACT

This Construction Contract is made in Orange County, California, by and between Horizon Underpinning, LLC hereinafter referred to as "Contractor", with offices at 24881 Alicia Pkwy., #E536, Laguna Hills, CA 92653, and the Individual(s)/Entity(ies) identified below, hereinafter referred to as "Client":

CLIENT(S):   RAF Development, LLC
ADDRESS:    27811 Abadejo, Mission Viejo, CA 92692
PHONE NO.: 949-295-0623
JOBSITE:    All

Contractors are required by law to be licensed and regulated by the Contractor's State License Board which has jurisdiction to investigate complaints against contractors if a complaint is filed within three years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractor's State License Board, P. 0. Box 26000, Sacramento, CA 95826._____

## TERMS AND CONDITIONS

1.      PLANS AND SPECIFCATIONS: "Contractor" hereby agrees to furnish all services material, labor, tools, equipment, and other items required to undertake and complete all work at the Jobsite required by the Plans and Specifications (attached as "Addendum A") and the General Conditions (attached as "Addendum B-1 schedule A & B"). All referenced addenda shall be initialed by "Buyer" and shall form a part of this Construction Contract.

2.      PAYMENT OBLIGATION: In consideration of the covenants and agreements set forth in this Construction Contract being substantially performed and kept by "Contractor", "Buyer" hereby agrees to pay "Contractor" (or designee) the total sum of $49,000 payable in installments or further amounts as agreed by the Parties. In accordance with the "Payment Schedule Addendum".
Payment is from_XX_ Buyer funds (cash) or from_ Insurance funds. In the event "Buyer" fails to make timely payment as set forth above, "Contractor" shall have no obligation to perform further work in accordance with this Construction Contract and shall have the right to immediately cease any work in progress without further notice to Buyer. Contractor shall provide notice of completion for each phase of work for which contractor is seeking payment. Owner shall pay contractor within 3 days after receipt of such notice. Payments identified above may come due at any time and are not necessarily in consecutive order. In the event bank financing is indicated, this Construction Contract shall be incorporated into the financing agreement and all dates, terms, and conditions herein shall be subject to the dates, terms, and conditions of the financing agreement. If payments are not made within the seven days from receipt of invoice, the amount is subject to a 1.5% fee per month.

3.      COMMENCEMENT AND COMPLETION OF WORK: "Contractor" shall commence work on or before _15_ days after permit approval and shall substantially complete construction within _30_ business days from commencement date ("business days" being defined as other than Saturdays, Sundays and State/National holidays). Substantial commencement of work shall be defined as commencement of excavation work. The work shall be deemed substantially complete when "Contractor" has finished all work called for by the Construction Contract and the work is ready to be used and occupied by "Buyer", even though minor items may remain to be installed, finished, or corrected provided such minor items do not have any appreciable effect on the ability of "Buyer" to utilize the work for its intended purpose.

Page 1 of 6

RAF000504

California Contractor #798041                                    Project Number

4.    CONSTRUCTION CONTRACT DOCUMENTS:  The following attached documents are incorporated herein by reference and constitute a part of this Construction Contract:

XX_ Addendum A-1 (Plans/Specifications)    XX  Notice To Owner
XX_ Addendum B-1 (Scope of work)           XX  Notice of Cancellation
XX_ Addendum B-2 (General Conditions)      XX  Payment Schedule Addendum
XX_ Addendum B-3 (Indemnity Agreement)

THIS CONSTRUCTION CONTRACT CONSTITUTES THE ENTIRE AGREEMENT OF THE PARTIES, AND NO WRITTEN OR ORAL COMMUNICATION BETWEEN "CONTRACTOR" AND "BUYER" BEFORE THE TIME OF EXECUTION OF THIS CONSTRUCTION CONTRACT SHALL BE CONSID-ERED TO ENLARGE, MODIFY OR EXPLAIN THE TERMS OF THE CONSTRUCTION CONTRACT.

_____              _____
Contractor                           Buyer
    4/7/20                                        4/7/2020
_____              _____
Date                                 Date

CONTRACTOR'S STATEMENT TO BUYER.  PLEASE READ AND SIGN.

"BUYER" UNDERSTANDS THE FACT THAT THERE ARE POTENTIAL "INHERENT DANGERS" IN THE USE OF ANY CONSTRUCTION.  "BUYER" PLEASE BE AWARE THAT OUR INTENTION IS TO CONSTRUCT YOUR PROJECT WITH AS MANY "REALISTIC" SAFEGUARDS AS POSSIBLE. "BUYER" SHOULD USE THE PRODUCT AS SAFELY AS POSSIBLE AND STAY WITHIN THE BOUNDARIES OF RESPONSIBLE USAGE.  PLEASE USE THE ELEMENTS AS THEY WERE INITIALLY INTENDED.  PLEASE EXERCISE APPROPRIATE CAUTIONS WHEN ENJOYING THE WORK!  WE HOPE THAT YOU ENJOY THE PROJECT FOR MANY YEARS TO COME.

_____              _____
Buyer                                4/7/2020
                                     Date

CONTRACTOR WRITTEN AUTHORIZATION REQUIRED PRIOR TO ACCEPTANCE

_____              _____
Contractor                           4/7/20
                                     Date

YOU, THE "BUYER", HAVE THE RIGHT TO REQUIRE A PERFORMANCE AND PAYMENT BOND. IF YOU ARE INTERESTED IN OBTAINING A BOND, PLEASE ASK YOUR "CONTRACTOR"/REPRE-SENTATIVE FOR DETAILS.

YOU, THE "BUYER", MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DAY OF THIS TRANSACTION.  SEE THE ATTACHED "NOTICE OF CANCELLATION" FORM FOR AN EXPLANATION OF THIS RIGHT.  "BUYER'S" SIGNATURE ACKNOWLEDGES THAT "BUYER" RECEIVED THE ATTACHED "NOTICE OF CANCELLATION" AND "NOTICE TO OWNER" FORMS.  "BUYER" ALSO ACKNOWLEDGES THAT "BUYER" HAS BEEN ADVISED VERBALLY OF "BUYER'S" RIGHT TO CANCEL THIS CONTRACT ON OR BEFORE MIDNIGHT OF _____4/11/20_____.

                                     _____
                                     Buyer

RAF000505

California Contractor #798014                                    Project Number

## GENERAL CONDITIONS

Addendum B-2

**A.      PERFORMANCE BY "CONTRACTOR":** "Contractor" shall perform all work required by the Construction Contract in a good and workmanlike manner and in conformity to industry standards. "Buyer" understands that any plans or scale drawings are merely descriptive of the specifications. Should there be any variance, inconsistency, or other conflict between the plans, drawings and specifications, the specifications shall take precedence.

**B.      DELAYS:** Delays in work (if any) beyond the control of "Contractor", including, but not limited to, act of God, fire, flood, inclement weather, strikes, boycotts, unavailability of materials, government prohibition or like obstructive actions, and changes to the Construction Contract by "Buyer" or non-payment or other delay or interference by "Buyer" (or other contractors engaged by "Buyer"), shall extend the date of completion proportionately. Failure of "Contractor", without lawful excuse, to substantially commence work within twenty (20) days from the approximate date specified in the Construction Contract when work will begin is a violation of the Contractor's State License Law.

**C.      MODIFICATION OF WORK:** No work other than as set forth in this Construction Contract shall be done by "Contractor" without prior authorization of "Buyer". "Buyer", in consultation with "Contractor", may request additional work by written change order. Any change order shall set forth the requested change(s) in construction and the resulting price adjustment and shall, upon execution by "Contractor" and "Buyer", become a part of this Construction Contract. Payment for any additional work is due and payable upon completion. "Contractor" reserves the right to use substitute and equivalent equipment or material in the event any specified equipment or material becomes unavailable. Subject to owners approval.

**D.      REPRESENTATION AND DUTIES OF "BUYER":** "Buyer" agrees to make all payments called for by this Construction Contract on time and without set-off or withholding for any scheduled repairs to completed work. Upon satisfactory payment being made for any portion of the work performed, "Contractor" shall, prior to any further payment being made, furnish "Buyer" an unconditional release from any claim or Mechanic's Lien pursuant to Section 3114 of the Civil Code, for that portion of the work for which payment has been made. Lien releases will not be issued when a Performance and Payment Bond has been provided. "Buyer" hereby authorizes "Contractor" to make such investigation of "Buyer's" credit as "Contractor", in its discretion, deems necessary.

"Buyer" warrants and agrees that "Contractor" shall be provided reasonable access to the Jobsite and that such access (whether across "Buyer's" property or adjacent property owned by others) shall be provided at no cost and liability to "Contractor". "Buyer" agrees to remove or relocate fencing, underground utilities and piping, rocks or other obstructions which impede normal access to the Jobsite or which impede the work of construction. This information shall be provided to Owner prior to commencement of any work in the form of a memo.

Contractor shall secure and "Buyer shall" pay for all building permits and variances, and contractor shall obtain any necessary approval(s) from governmental or governing entities (e.g., homeowner associations) for execution of the project as described in the plans and specifications. "Buyer" is responsible for security of property during non-business hours. Contractors shall abide by all association rules and regulations.

**E.      DEFAULT:** In the event of "either parties" default of any provision of this Construction Contract, "The defaulting party" agrees to pay all costs of collection, including attorney's fees, from the date of default. In the event of default, "Buyer" grants to "Contractor" the right, without further notice to "Buyer", to pass over "Buyer's" property in order to repossess any material and equipment owned or installed by "Contractor". Any failure of "either party" to exercise any right under this Construction Contract, or to insist upon strict compliance by , shall not constitute a waiver of "The defaulting party" right to subsequently demand exact compliance of all terms and conditions.

**F.      CONCEALED CONDITIONS:** If "Contractor" encounters underground or concealed conditions that were unknown to "Contractor" before execution of this Construction Contract and that could not have reasonably have been anticipated, "Contractor" shall stop work until such time as "Contractor" and "Buyer" have reached an agreement as to equitable compensation to be paid to "Contractor" for dealing with such condition. Also the signer of this contract has the legal right to accept the liability of this contract or has written permission to accept on the owners behalf. The signer of the contract also has written permission from any owner, city agency, public utility or any property that he will or has encroached upon. With or with out knowledge, from the contractor. Owner shall be responsible for repairing any damage to underground utilities.

**G.      DESTRUCTION OF THE WORK:** If more than fifty percent (50%) of the value of the work accomplished by "Contractor" should be damaged or destroyed by fire, flood, earthquake, or other event that is not the fault of the "Contractor", then the obligations of the parties under this Construction Contract shall terminate when "Buyer" has paid "Contractor" the value of the work accomplished based on its percentage of completion, and "Contractor" shall be under no obligation to rebuild.

RAF000506

California Contractor #798014                                         Project Number

H.    **INTERPRETATION:** Captions or heading of the paragraphs of this Construction Contract are solely for the convenience of the parties and shall not be deemed to limit or define any provision of this Construction Contract. Should any provision of this Construction Contract be declared invalid, such provision shall not invalidate the remainder of this Construction Contract and the remainder of this Construction Contract shall be enforceable as if the invalid portion had been eliminated. This Construction Contract shall not be construed as if prepared by one of the parties, but rather as if both parties had prepared the same.

I.    **SUCCESSORS AND ASSIGNS:** This Construction Contract shall be jointly and severally binding on "Buyer" and shall be binding on "Buyer's" heirs and representatives. This Construction Contract shall inure to the benefit of "Contractor", its successors and assigns.

J.    **GENERAL:** ALL WARRANTIES SHALL ONLY BECOME EFFECTIVE UPON RECEIPT OF ALL PAYMENTS DUE UNDER THIS CONSTRUCTION CONTRACT. "CONTRACTOR" WARRANTS THAT ALL MATERIALS, FACILITIES, WORK, AND EQUIPMENT WILL BE FREE OF DEFECTS AND WILL OPERATE PROPERLY FOR TWENTY FIVE YEARS AFTER SUBSTANTIAL COMPLETION OF THE PROJECT. "CONTRACTOR" WILL ASSEMBLE AND TRANSMIT TO "BUYER"
THE GUARANTEES AND OPERATING INSTRUCTIONS OF ALL SUPPLIERS, SUBCONTRACTORS AND MATERIAL-MEN. "CONTRACTOR" WILL, AT ITS OWN EXPENSE, REPAIR OR REPLACE ANY ITEM FOUND TO BE DEFECTIVE WITHIN TEN YEARS AFTER SUBSTANTIAL COMPLETION, UNLESS DIFFERENT TERMS ARE REQUIRED BY LOCAL JURISDICTION OR EXTENDED PRODUCT WARRANTIES ARE PROVIDED BY SPECIFIC MANUFACTURERS.

       **EFFLORESCENCE** (Leaching of Salts - leaving a white salty buildup over time): EFFLORESCENCE IS A COMMON PROBLEM WITH ANY CONCRETE PRODUCT SUBJECTED TO WATER SUBMERSION OR ACTIVITY. HORIZON GOES TO GREAT LENGTHS WITH THE CONCRETE ADDITIVES THAT WE USE TO CUT DOWN AND, HOPEFULLY IN TIME, ELIMINATE THIS EFFECT ALL TOGETHER. HOWEVER, EFFLORESCENCE MAINTENANCE IS NOT COVERED IN THE POST CONSTRUCTION YEARS.
       **PLANT OR VEGETATION MATERIAL:** NOT COVERED, HORIZON HAS NO WARRANTIES FOR COSMEDIC REPAIR.

---

### INDEMNITY AGREEMENT          Addendum B-3

       This INDEMNITY AGREEMENT (this "Agreement") is made effective on the date written above by and between RAF Development, LLC, and Horizon Underpinning, LLC, hereinafter referred to as "Horizon" are sometimes individually referred to as "Party" and sometimes collectively referred to as the "Parties".

       Whereas Horizon will be performing the services outlined in the Scope of Work (along with all attached addenda) referenced above and incorporated herein by reference; and

       Whereas, in exchange for valuable consideration Horizon desires to defend and indemnify RAF from any claims and/or litigation arising out of Horizon's performance of the work of providing these services.

       Now Therefore, in consideration of the mutual covenants and conditions contained herein, the Parties hereby agree as follows:
TERMS

    1.   Indemnification. Horizon shall fully defend, indemnify and hold harmless RAF Development, LLC and its managers, including Glenn Fenner (collectively, "RAF"), from any and all claims, lawsuits, demands, causes of action, liability, loss, damage and/or injury of any kind whatsoever (including without limitation all claims for monetary loss, property damage, equitable relief, personal injury and/or wrongful death), whether brought by an individual or other entity, or imposed by a court of law or by administrative action of any federal, state, or local governmental body or agency arising out of, in any way whatsoever, any alleged acts, omissions, negligence or willful misconduct on the part of Horizon, its officers, owners, personnel, employees, agents contractors, invitees, or volunteers. This Indemnification applies to and includes, without limitation, the payment of all penalties, fines, judgements, awards, decrees, attorney's fees, and related costs or expenses and any reimbursements to RAF for all legal fees, expenses, and costs incurred by it.

    2.   Authority to Enter Agreement. Each Party warrants that the individuals who have signed this Agreement have the actual legal power, right and authority to make this Agreement and bind each respective Party.

    3.   Amendment; Modification. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing and signed by both Parties.

RAF000507

California Contractor #798014                                           Project Number

4. **Waiver.** No waiver of any default shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a Party shall give the other Party any contractual right by custom, estoppel, or otherwise.

5. **Attorneys' Fees and Costs.** If any legal action or other proceeding is brought in connection with this Agreement, the successful or prevailing Party, if any, shall be entitled to recover reasonable attorneys' fees and other related costs, in addition to any other relief to which that Party is entitled. In the event that it is the subject of dispute, the court or trier of fact who presides over such legal action or proceeding is empowered to determine which Party, if any, is the prevailing party in accordance with this provision.

6. **Entire Agreement.** This Agreement contains the entire agreement between the Parties related to the matters specified herein, and supersedes any prior oral or written statements or agreements between the Parties related to such matters.

7. **Enforceability, Severability, and Reformation.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited. The intent of the Parties is to provide as broad an indemnification as possible under California law.

8. **Applicable Law.** This Agreement shall be governed exclusively by the laws of the State of California, without regard to conflict of law provisions.

9. **Arbitration.** Should any controversy arise as a result of this transaction, the Parties agree to have the matter arbitrated by and under the rules of the Judicial Arbitration and Mediation Services of Orange County without the necessity of a court order. All rights of discovery allowed by law may be utilized. Any decision shall be final and binding upon all parties.

10. **Signatures.** This Agreement shall be signed on behalf of RAF by Glenn E. Fenner, Managing Member and on behalf of Horizon by John R. Martindale, Managing Member and shall be effective on the date first written above.

RAF Development, LLC                                    Horizon Underpinning, LLC

_____        4/7/2020        _____        4/7/20
Managing Member                Date             Managing Member                Date

---

## NOTICE TO OWNER

Under the California Mechanic's Lien Law, any contractor, subcontractor, laborer, supplier, or other person or entity who helps to improve your property, but is not paid for his or her work or supplies, has a right to place a lien on your home, land, or property where the work was performed and to sue you in court to obtain payment.

This means that after a court hearing, your home, land and property could be sold by a court officer and the proceeds of the sale used to satisfy what you owe. This can happen even if you have paid your contractor in full if the contractor's laborers, or suppliers remain unpaid.

To preserve their rights to file a claim or lien against your property, certain claimants, such as subcontractors or material suppliers, are each required to provide you with a document called a "Preliminary Notice". Contractors and laborers who contract with owners directly do not have to provide such notice since you are aware of their existence as an owner. A "Preliminary Notice" is not a lien against your property if they are not paid. In order to perfect their lien rights, a contractor, subcontractor, supplier, or laborer must file a Mechanic's Lien with the county recorder which then becomes a recorded lien against your property. Generally, the maximum time allowed for filing a Mechanic's Lien against your property is ninety (90) days after substantial completion of your project.

TO INSURE EXTRA PROTECTION FOR YOURSELF AND YOUR PROPERTY, YOU MAY WISH TO TAKE ONE OR MORE OF THE FOLLOWING ACTIONS:

(1) Require that your contractor supply you with a Payment and Performance Bond (not a licensed bond), which provides that the bonding company will either complete the project or pay damages up to the amount of the bond. This Payment and Performance Bond, as well as a copy of the Construction Contract, should be filed with the county recorder for your further protection. The Payment and Performance Bond will usually cost from one (1%) to five (5%) percent of the contract amount depending on the contractor's bonding ability. If a contractor cannot obtain such bonding, it may indicate his or her financial incapacity.

RAF000508

California Contractor #798014                                    Project Number

(2) Require that payments be made directly to subcontractors and material suppliers through a joint control. Funding services may be available, for a fee, in your area which will establish a voucher or other means of payment to your contractor. These services may also provide you with Lien Waivers and other forms of protection. Any joint control agreement should include the addendum approved by the registrar.

(3) Issue joint checks for payment, made out to both your contractor and subcontractors or material suppliers involved in the project. The joint checks should be made payable to the persons or entities which send preliminary notices to you. These persons or entities have indicated that they may have lien rights on your property, therefore, you need to protect yourself. This will help to insure that all persons due payment are actually paid.

(4) Upon making payment on any completed phase of the project and before making any further payments, require your contractor to provide you with unconditional "Waiver and Release" forms signed by each material supplier, subcontractor, and laborer involved in that portion of the work for which payment was made. The Statutory Lien Releases are set forth in exact language in Section 3262 of the Civil Code. Most stationary stores will sell the "Waiver and Release" forms if your contractor does not have them. The material suppliers, subcontractors, and laborers that you obtain releases from are those persons or entities who have filed Preliminary Notices with you.

If you are not certain of the material suppliers, subcontractors, and laborers working on your project, you may obtain a list from your contractor. On projects involving improvements to a single-family residence or a duplex owned by individuals, the person signing these releases loses the right to file a Mechanic's Lien claim against your property. In other types of construction, this protection may still be important, but may not be as complete.

To protect yourself under this option, you must be certain that all material suppliers, subcontractors, and laborers have signed the "Waiver and Release" form. If a Mechanic's Lien has been filed against your property, it can only be voluntarily released by a recorded "Release of Mechanic's Lien" signed by the person or entity that filed the Mechanic's Lien against your property, unless the law suit to enforce your lien was not timely filed. You should consult an attorney if a lien is filed against your property.

---

## NOTICE OF CANCELLATION

Date of Transaction: _____ 4/7/20 _____

You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within ten (10) days following receipt by the seller of your Cancellation Notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do not make the goods available to the seller and the seller does not pick them up within twenty (20) days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to: "Contractor" located at 24881 Alicia Pkwy., R536, Laguna Hills, CA 92653.

NO LATER THAN MIDNIGHT OF: _____ 4/11/20 _____

I hereby cancel this transaction.


_____          _____
Date                                      "Buyer"


Page 6 of 6

RAF000509

# EXHIBIT 2

California Contractor #798014                           Project Number

# HORIZON UNDERPINNING

## CONSTRUCTION CONTRACT

This Construction Contract is made in Orange County, California, by and between Horizon Underpinning, LLC hereinafter referred to as "Contractor", with offices at 24881 Alicia Pkwy., #E536, Laguna Hills, CA 92653, and the Individual(s)/Entity(ies) identified below, hereinafter referred to as "Client":

CLIENT(S):   RAF Development, LLC
ADDRESS:     27811 Abadejo, Mission Viejo, CA 92692
PHONE NO.: 949-295-0623
JOBSITE:     All

Contractors are required by law to be licensed and regulated by the Contractor's State License Board which has jurisdiction to investigate complaints against contractors if a complaint is filed within three years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractor's State License Board, P. 0. Box 26000, Sacramento, CA 95826.

## TERMS AND CONDITIONS

1.     PLANS AND SPECIFCATIONS: "Contractor" hereby agrees to furnish all services material, labor, tools, equipment, and other items required to undertake and complete all work at the Jobsite required by the Plans and Specifications (attached as "Addendum A") and the General Conditions (attached as "Addendum B-1 schedule A & B"). All referenced addenda shall be initialed by "Buyer" and shall form a part of this Construction Contract.

2.     PAYMENT OBLIGATION: In consideration of the covenants and agreements set forth in this Construction Contract being substantially performed and kept by "Contractor", "Buyer" hereby agrees to pay "Contractor" (or designee) the total sum of $49,000 payable in installments or further amounts as agreed by the Parties. In accordance with the "Payment Schedule Addendum".
Payment is from_XX_ Buyer funds (cash) or from_ Insurance funds. In the event "Buyer" fails to make timely payment as set forth above, "Contractor" shall have no obligation to perform further work in accordance with this Construction Contract and shall have the right to immediately cease any work in progress without further notice to Buyer. Contractor shall provide notice of completion for each phase of work for which contractor is seeking payment. Owner shall pay contractor within 3 days after receipt of such notice. Payments identified above may come due at any time and are not necessarily in consecutive order. In the event bank financing is indicated, this Construction Contract shall be incorporated into the financing agreement and all dates, terms, and conditions herein shall be subject to the dates, terms, and conditions of the financing agreement. If payments are not made within the seven days from receipt of invoice, the amount is subject to a 1.5% fee per month.

3.     COMMENCEMENT AND COMPLETION OF WORK: "Contractor" shall commence work on or before _15_ days after permit approval and shall substantially complete construction within _30_ business days from commencement date ("business days" being defined as other than Saturdays, Sundays and State/National holidays). Substantial commencement of work shall be defined as commencement of excavation work. The work shall be deemed substantially complete when "Contractor" has finished all work called for by the Construction Contract and the work is ready to be used and occupied by "Buyer", even though minor items may remain to be installed, finished, or corrected provided such minor items do not have any appreciable effect on the ability of "Buyer" to utilize the work for its intended purpose.

Page 1 of 6

RAF000284

California Contractor #798041                                    Project Number

4.      CONSTRUCTION CONTRACT DOCUMENTS:  The following attached documents are incorporated herein by reference and constitute a part of this Construction Contract:

XX_ Addendum A-1 (Plans/Specifications)      XX Notice To Owner
XX_ Addendum B-1 (Scope of work)             XX Notice of Cancellation
XX_ Addendum B-2 (General Conditions)        XX Payment Schedule Addendum
XX_ Addendum B-3 (Indemnity Agreement)

THIS CONSTRUCTION CONTRACT CONSTITUTES THE ENTIRE AGREEMENT OF THE PARTIES, AND NO WRITTEN OR ORAL COMMUNICATION BETWEEN "CONTRACTOR" AND "BUYER" BEFORE THE TIME OF EXECUTION OF THIS CONSTRUCTION CONTRACT SHALL BE CONSID-ERED TO ENLARGE, MODIFY OR EXPLAIN THE TERMS OF THE CONSTRUCTION CONTRACT.

_____          _____
Contractor                           Buyer
___4/7/20___                         ___4/7/2020___
Date                                 Date

**CONTRACTOR'S STATEMENT TO BUYER.  PLEASE READ AND SIGN.**

"BUYER" UNDERSTANDS THE FACT THAT THERE ARE POTENTIAL "INHERENT DANGERS" IN THE USE OF ANY CONSTRUCTION.  "BUYER" PLEASE BE AWARE THAT OUR INTENTION IS TO CONSTRUCT YOUR PROJECT WITH AS MANY "REALISTIC" SAFEGUARDS AS POSSIBLE. "BUYER" SHOULD USE THE PRODUCT AS SAFELY AS POSSIBLE AND STAY WITHIN THE BOUNDARIES OF RESPONSIBLE USAGE.  PLEASE USE THE ELEMENTS AS THEY WERE INITIALLY INTENDED.  PLEASE EXERCISE APPROPRIATE CAUTIONS WHEN ENJOYING THE WORK!  WE HOPE THAT YOU ENJOY THE PROJECT FOR MANY YEARS TO COME.

_____          ___4/7/2020___
Buyer                                Date

CONTRACTOR WRITTEN AUTHORIZATION REQUIRED PRIOR TO ACCEPTANCE

_____          ___4/7/20___
Contractor                           Date

YOU, THE "BUYER", HAVE THE RIGHT TO REQUIRE A PERFORMANCE AND PAYMENT BOND. IF YOU ARE INTERESTED IN OBTAINING A BOND, PLEASE ASK YOUR "CONTRACTOR"/REPRE-SENTATIVE FOR DETAILS.

YOU, THE "BUYER", MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DAY OF THIS TRANSACTION.  SEE THE ATTACHED "NOTICE OF CANCELLATION" FORM FOR AN EXPLANATION OF THIS RIGHT.  "BUYER'S" SIGNATURE ACKNOWLEDGES THAT "BUYER" RECEIVED THE ATTACHED "NOTICE OF CANCELLATION" AND "NOTICE TO OWNER" FORMS.  "BUYER" ALSO ACKNOWLEDGES THAT "BUYER" HAS BEEN ADVISED VERBALLY OF "BUYER'S" RIGHT TO CANCEL THIS CONTRACT ON OR BEFORE MIDNIGHT OF _____4/11/20_____.

_____
Buyer

RAF000285

California Contractor #798014                                    Project Number

## GENERAL CONDITIONS

Addendum B-2

**A.    PERFORMANCE BY "CONTRACTOR"**:  "Contractor" shall perform all work required by the Construction Contract in a good and workmanlike manner and in conformity to industry standards. "Buyer" understands that any plans or scale drawings are merely descriptive of the specifications. Should there be any variance, inconsistency, or other conflict between the plans, drawings and specifications, the specifications shall take precedence.

**B.    DELAYS**:  Delays in work (if any) beyond the control of "Contractor", including, but not limited to, act of God, fire, flood, inclement weather, strikes, boycotts, unavailability of materials, government prohibition or like obstructive actions, and changes to the Construction Contract by "Buyer" or non-payment or other delay or interference by "Buyer" (or other contractors engaged by "Buyer"), shall extend the date of completion proportionately. Failure of "Contractor", without lawful excuse, to substantially commence work within twenty (20) days from the approximate date specified in the Construction Contract when work will begin is a violation of the Contractor's State License Law.

**C.  MODIFICATION OF WORK**:  No work other than as set forth in this Construction Contract shall be done by "Contractor" without prior authorization of "Buyer". "Buyer", in consultation with "Contractor", may request additional work by written change order. Any change order shall set forth the requested change(s) in construction and the resulting price adjustment and shall, upon execution by "Contractor" and "Buyer", become a part of this Construction Contract. Payment for any additional work is due and payable upon completion. "Contractor" reserves the right to use substitute and equivalent equipment or material in the event any specified equipment or material becomes unavailable. Subject to owners approval.

**D.  REPRESENTATION AND DUTIES OF "BUYER"**:  "Buyer" agrees to make all payments called for by this Construction Contract on time and without set-off or withholding for any scheduled repairs to completed work. Upon satisfactory payment being made for any portion of the work performed, "Contractor" shall, prior to any further payment being made, furnish "Buyer" an unconditional release from any claim or Mechanic's Lien pursuant to Section 3114 of the Civil Code, for that portion of the work for which payment has been made. Lien releases will not be issued when a Performance and Payment Bond has been provided. "Buyer" hereby authorizes "Contractor" to make such investigation of "Buyer's" credit as "Contractor", in its discretion, deems necessary.

"Buyer" warrants and agrees that "Contractor" shall be provided reasonable access to the Jobsite and that such access (whether across "Buyer's" property or adjacent property owned by others) shall be provided at no cost and liability to "Contractor". "Buyer" agrees to remove or relocate fencing, underground utilities and piping, rocks or other obstructions which impede normal access to the Jobsite or which impede the work of construction. This information shall be provided to Owner prior to commencement of any work in the form of a memo.

Contractor shall secure and "Buyer shall" pay for all building permits and variances, and contractor shall obtain any necessary approval(s) from governmental or governing entities (e.g., homeowner associations) for execution of the project as described in the plans and specifications. "Buyer" is responsible for security of property during non-business hours. Contractors shall abide by all association rules and regulations.

**E.    DEFAULT**:  In the event of "either parties" default of any provision of this Construction Contract, "The defaulting party" agrees to pay all costs of collection, including attorney's fees, from the date of default. In the event of default, "Buyer" grants to "Contractor" the right, without further notice to "Buyer", to pass over "Buyer's" property in order to repossess any material and equipment owned or installed by "Contractor". Any failure of "either party" to exercise any right under this Construction Contract, or to insist upon strict compliance by , shall not constitute a waiver of "The defaulting party" right to subsequently demand exact compliance of all terms and conditions.

**F.    CONCEALED CONDITIONS**:  If "Contractor" encounters underground or concealed conditions that were unknown to "Contractor" before execution of this Construction Contract and that could not have reasonably have been anticipated, "Contractor" shall stop work until such time as "Contractor" and "Buyer" have reached an agreement as to equitable compensation to be paid to "Contractor" for dealing with such condition. Also the signer of this contract has the legal right to accept the liability of this contract or has written permission to accept on the owners behalf. The signer of the contract also has written permission from any owner, city agency, public utility or any property that he will or has encroached upon. With or with out knowledge, from the contractor. Owner shall be responsible for repairing any damage to underground utilities.

**G.    DESTRUCTION OF THE WORK**:  If more than fifty percent (50%) of the value of the work accomplished by "Contractor" should be damaged or destroyed by fire, flood, earthquake, or other event that is not the fault of the "Contractor", than the obligations of the parties under this Construction Contract shall terminate when "Buyer" has paid "Contractor" the value of the work accomplished based on its percentage of completion, and "Contractor" shall be under no obligation to rebuild.

RAF000286

California Contractor #798014                                           Project Number

H.      INTERPRETATION: Captions or heading of the paragraphs of this Construction Contract are solely for the convenience of the parties and shall not be deemed to limit or define any provision of this Construction Contract. Should any provision of this Construction Contract be declared invalid, such provision shall not invalidate the remainder of this Construction Contract and the remainder of this Construction Contract shall be enforceable as if the invalid portion had been eliminated. This Construction Contract shall not be construed as if prepared by one of the parties, but rather as if both parties had prepared the same.

I.      SUCCESSORS AND ASSIGNS: This Construction Contract shall be jointly and severally binding on "Buyer" and shall be binding on "Buyer's" heirs and representatives. This Construction Contract shall inure to the benefit of "Contractor", its successors and assigns.

J.      GENERAL: ALL WARRANTIES SHALL ONLY BECOME EFFECTIVE UPON RECEIPT OF ALL PAYMENTS DUE UNDER THIS CONSTRUCTION CONTRACT. "CONTRACTOR" WARRANTS THAT ALL MATERIALS, FACILITIES, WORK, AND EQUIPMENT WILL BE FREE OF DEFECTS AND WILL OPERATE PROPERLY FOR TWENTY FIVE YEARS AFTER SUBSTANTIAL COMPLETION OF THE PROJECT. "CONTRACTOR" WILL ASSEMBLE AND TRANSMIT TO "BUYER"
THE GUARANTEES AND OPERATING INSTRUCTIONS OF ALL SUPPLIERS, SUBCONTRACTORS AND MATERIAL-MEN. "CONTRACTOR" WILL, AT ITS OWN EXPENSE, REPAIR OR REPLACE ANY ITEM FOUND TO BE DEFECTIVE WITHIN TEN YEARS AFTER SUBSTANTIAL COMPLETION, UNLESS DIFFERENT TERMS ARE REQUIRED BY LOCAL JURISDICTION OR EXTENDED PRODUCT WARRANTIES ARE PROVIDED BY SPECIFIC MANUFACTURERS.

        EFFLORESCENCE (Leaching of Salts – leaving a white salty buildup over time): EFFLORESCENCE IS A COMMON PROBLEM WITH ANY CONCRETE PRODUCT SUBJECTED TO WATER SUBMERSION OR ACTIVITY. HORIZON GOES TO GREAT LENGTHS WITH THE CONCRETE ADDITIVES THAT WE USE TO CUT DOWN AND, HOPEFULLY IN TIME, ELIMINATE THIS EFFECT ALL TOGETHER. HOWEVER, EFFLORESCENCE MAINTENANCE IS NOT COVERED IN THE POST CONSTRUCTION YEARS.
        PLANT OR VEGETATION MATERIAL: NOT COVERED, HORIZON HAS NO WARRANTIES FOR COSMEDIC REPAIR.

---

## INDEMNITY AGREEMENT          Addendum B-3

        This INDEMNITY AGREEMENT (this "Agreement") is made effective on the date written above by and between RAF Development, LLC, and Horizon Underpinning, LLC, hereinafter referred to as "Horizon" are sometimes individually referred to as "Party" and sometimes collectively referred to as the "Parties".

        Whereas Horizon will be performing the services outlined in the Scope of Work (along with all attached addenda) referenced above and incorporated herein by reference; and

        Whereas, in exchange for valuable consideration Horizon desires to defend and indemnify RAF from any claims and/or litigation arising out of Horizon's performance of the work of providing these services.

        Now Therefore, in consideration of the mutual covenants and conditions contained herein, the Parties hereby agree as follows:
TERMS

    1.  Indemnification. Horizon shall fully defend, indemnify and hold harmless RAF Development, LLC and its managers, including Glenn Farmer (collectively, "RAF"), from any and all claims, lawsuits, demands, causes of action, liability, loss, damage and/or injury of any kind whatsoever (including without limitation all claims for monetary loss, property damage, equitable relief, personal injury and/or wrongful death), whether brought by an individual or other entity, or imposed by a court of law or by administrative action of any federal, state, or local governmental body or agency arising out of, in any way whatsoever, any alleged acts, omissions, negligence or willful misconduct on the part of Horizon, its officers, owners, personnel, employees, agents contractors, invitees, or volunteers. This Indemnification applies to and includes, without limitation, the payment of all penalties, fines, judgements, awards, decrees, attorney's fees, and related costs or expenses and any reimbursements to RAF for all legal fees, expenses, and costs incurred by it.

    2.  Authority to Enter Agreement. Each Party warrants that the individuals who have signed this Agreement have the actual legal power, right and authority to make this Agreement and bind each respective Party.

    3.  Amendment; Modification. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing and signed by both Parties.

RAF000287

California Contractor #798014                                    Project Number

4. **Waiver.** No waiver of any default shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a Party shall give the other Party any contractual right by custom, estoppel, or otherwise.

5. **Attorneys' Fees and Costs.** If any legal action or other proceeding is brought in connection with this Agreement, the successful or prevailing Party, if any, shall be entitled to recover reasonable attorneys' fees and other related costs, in addition to any other relief to which that Party is entitled. In the event that it is the subject of dispute, the court or trier of fact who presides over such legal action or proceeding is empowered to determine which Party, if any, is the prevailing party in accordance with this provision.

6. **Entire Agreement.** This Agreement contains the entire agreement between the Parties related to the matters specified herein, and supersedes any prior oral or written statements or agreements between the Parties related to such matters.

7. **Enforceability, Severability, and Reformation.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited. The intent of the Parties is to provide as broad an indemnification as possible under California law.

8. **Applicable Law.** This Agreement shall be governed exclusively by the laws of the State of California, without regard to conflict of law provisions.

9. **Arbitration.** Should any controversy arise as a result of this transaction, the Parties agree to have the matter arbitrated by and under the rules of the Judicial Arbitration and Mediation Services of Orange County without the necessity of a court order. All rights of discovery allowed by law may be utilized. Any decision shall be final and binding upon all parties.

10. **Signatures.** This Agreement shall be signed on behalf of RAF by Glenn E. Fanner, Managing Member and on behalf of Horizon by John R. Martindale, Managing Member and shall be effective on the date first written above.


RAF Development, LLC                              Horizon Underpinning, LLC

_____      4/7/2020            _____      4/7/20
Managing Member              Date                Managing Member              Date

---

**NOTICE TO OWNER**

Under the California Mechanic's Lien Law, any contractor, subcontractor, laborer, supplier, or other person or entity who helps to improve your property, but is not paid for his or her work or supplies, has a right to place a lien on your home, land, or property where the work was performed and to sue you in court to obtain payment.

This means that after a court hearing, your home, land and property could be sold by a court officer and the proceeds of the sale used to satisfy what you owe. This can happen even if you have paid your contractor in full if the contractor's laborers, or suppliers remain unpaid.

To preserve their rights to file a claim or lien against your property, certain claimants, such as subcontractors or material suppliers, are each required to provide you with a document called a "Preliminary Notice". Contractors and laborers who contract with owners directly do not have to provide such notice since you are aware of their existence as an owner. A "Preliminary Notice" is not a lien against your property if they are not paid. In order to perfect their lien rights, a contractor, subcontractor, supplier, or laborer must file a Mechanic's Lien with the county recorder which then becomes a recorded lien against your property. Generally, the maximum time allowed for filing a Mechanic's Lien against your property is ninety (90) days after substantial completion of your project.

TO INSURE EXTRA PROTECTION FOR YOURSELF AND YOUR PROPERTY, YOU MAY WISH TO TAKE ONE OR MORE OF THE FOLLOWING ACTIONS:

(1) Require that your contractor supply you with a Payment and Performance Bond (not a licensed bond), which provides that the bonding company will either complete the project or pay damages up to the amount of the bond. This Payment and Performance Bond, as well as a copy of the Construction Contract, should be filed with the county recorder for your further protection. The Payment and Performance Bond will usually cost from one (1%) to five (5%) percent of the contract amount depending on the contractor's bonding ability. If a contractor cannot obtain such bonding, it may indicate his or her financial incapacity.

RAF000288

California Contractor #798014                                    Project Number

(2) Require that payments be made directly to subcontractors and material suppliers through a joint control. Funding services may be available, for a fee, in your area which will establish a voucher or other means of payment to your contractor. These services may also provide you with Lien Waivers and other forms of protection. Any joint control agreement should include the addendum approved by the registrar.

(3) Issue joint checks for payment, made out to both your contractor and subcontractors or material suppliers involved in the project. The joint checks should be made payable to the persons or entities which send preliminary notices to you. Those persons or entities have indicated that they may have lien rights on your property, therefore, you need to protect yourself. This will help to insure that all persons due payment are actually paid.

(4) Upon making payment on any completed phase of the project and before making any further payments, require your contractor to provide you with unconditional "Waiver and Release" forms signed by each material supplier, subcontractor, and laborer involved in that portion of the work for which payment was made. The Statutory Lien Releases are set forth in exact language in Section 3262 of the Civil Code. Most stationary stores will sell the "Waiver and Release" forms if your contractor does not have them. The material suppliers, subcontractors, and laborers that you obtain releases from are those persons or entities who have filed Preliminary Notices with you.

If you are not certain of the material suppliers, subcontractors, and laborers working on your project, you may obtain a list from your contractor. On projects involving improvements to a single-family residence or a duplex owned by individuals, the person signing these releases loses the right to file a Mechanic's Lien claim against your property. In other types of construction, this protection may still be important, but may not be as complete.

To protect yourself under this option, you must be certain that all material suppliers, subcontractors, and laborers have signed the "Waiver and Release" form. If a Mechanic's Lien has been filed against your property, it can only be voluntarily released by a recorded "Release of Mechanic's Lien" signed by the person or entity that filed the Mechanic's Lien against your property, unless the law suit to enforce your lien was not timely filed. You should consult an attorney if a lien is filed against your property.

---

## NOTICE OF CANCELLATION

Date of Transaction: _____4/7/20_____

You may cancel this transaction, without any penalty or obligation, within three (3) business days from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale and any negotiable instrument executed by you will be returned within ten (10) days following receipt by the seller of your Cancellation Notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do not make the goods available to the seller and the seller does not pick them up within twenty (20) days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to: "Contractor" located at 24881 Alicia Pkwy., B536, Laguna Hills, CA 92653.

NO LATER THAN MIDNIGHT OF: _____4/11/20_____

I hereby cancel this transaction.

_____          _____
Date                                       "Buyer"

RAF000289

Raymond J. Tittmann No. 191298
Patrick M. Laurence No. 228272
**TITTMANN WEIX LLP**
350 S. Grand Ave., Suite 1630
Los Angeles, CA 90071
Phone: (213) 797-0630
Email:          rtittmann@tittmannweix.com
                    plaurence@tittmannweix.com

Attorneys for Defendants
CHAMPLAIN SPECIALTY INSURANCE
COMPANY and WESTCONGRESS INSURANCE
SERVICES, LLC

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE - NORTH JUSTICE CENTER

| | |
|---|---|
| JOHN MARTINDALE, formerly doing business as "Horizon Underpinning," an individual, and HORIZON UNDERPINNING, LLC, a California limited liability company,<br><br>        Plaintiffs,<br><br>            v.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA, a corporation domiciled in New Jersey; MESA UNDERWRITERS SPECIALY INSURANCE COMPANY, an unknown entity domiciled in New Jersey; CHAMPLAIN SPECIALTY INSURANCE COMPANY, a limited liability company domiciled in Delaware; WESTCONGRESS INSURANCE SERVICES, LLC, a Delaware limited liability company; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No. 30-2026-01561335-CU-BC-NJC<br><br>**Assigned For All Purposes To:**<br>Judge: Donald F. Gaffney<br>Dept.:  N16<br><br>**CHAMPLAIN SPECIALTY INSURANCE COMPANY AND WESTCONGRESS INSURANCE SERVICES, LLC'S ANSWER TO PLANTIFFS' UNVERIFIED COMPLAINT**<br><br><br><br>Complaint Filed: April 7, 2026 |

**COMES NOW,** Defendants CHAMPLAIN SPECIALTY INSURANCE COMPANY ("Champlain") and WESTCONGRESS INSURANCE SERVICES, LLC ("WestCongress"), who answer the Complaint of Plaintiffs JOHN MARTINDALE and HORIZON UNDERPINNING, LLC (collectively, "Plaintiffs") by admitting, denying and alleging as follows.

## GENERAL DENIAL

Pursuant to the provisions of Code of Civil Procedure section 431.30, subdivision (d), Champlain and WestCongress deny each and every allegation of Plaintiffs' unverified Complaint.

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

The Complaint fails to state facts sufficient to constitute a cause of action against Champlain and/or WestCongress.

## SECOND AFFIRMATIVE DEFENSE

(Equitable Defenses)

Plaintiffs' claims may be barred in whole or in part by the doctrines of laches, unclean hands, waiver, ratification, or estoppel.

## THIRD AFFIRMATIVE DEFENSE

(Comparative Fault)

Champlain and WestCongress are informed and believes, and based thereon allege, that the damages Plaintiffs allege resulted from their own breach, neglect, or other misconduct, or from that of their predecessors, assignors, or persons for whom Plaintiffs were responsible or with whom Plaintiffs were associated.

## FOURTH AFFIRMATIVE DEFENSE

(Failure to Mitigate Damages)

To the extent that Plaintiffs failed to mitigate, minimize, or avoid any damages they allegedly sustained or will sustain, any potential recovery against Champlain and WestCongress must be reduced by the amount attributable to such failure.

## FIFTH AFFIRMATIVE DEFENSE

(Policy Terms)

Plaintiffs' claims may be barred by the specific terms, exclusions, conditions, limitations and/or other provisions contained in or incorporated by reference in the applicable insurance policies.

**SIXTH AFFIRMATIVE DEFENSE**

(Satisfaction)

To the extent that the policy benefits have been paid or are paid to the designated beneficiary, or Champlain and WestCongress have otherwise met their obligations under the policies, if any, Champlain and WestCongress' obligations under the contract have been satisfied and the causes of action asserted in the Complaint are barred.

**SEVENTH AFFIRMATIVE DEFENSE**

(Genuine Dispute Doctrine)

Plaintiffs' bad faith claim is barred by the genuine dispute doctrine.

**EIGHTH AFFIRMATIVE DEFENSE**

(Limitations Period)

Plaintiffs' claims may be barred by the applicable statutes of limitations or contractual limitations period set forth in the policies.

**NINTH AFFIRMATIVE DEFENSE**

(Timing of Notice)

Champlain and WestCongress allege that the Complaint and the causes of action alleged therein are barred to the extent the timing of the notice to Champlain and WestCongress did not comply with the terms, conditions, and requirements of the insurance policy identified in the Complaint.

**TENTH AFFIRMATIVE DEFENSE**

(Other Insurance)

Champlain and WestCongress assert and allege that the Complaint and the causes of action alleged therein are barred to the extent that Plaintiffs may recover sums from other insurance carriers which provide coverage for the claims at issue in the Complaint, and that any such damages allegedly suffered by Plaintiffs as a result of Champlain and WestCongress alleged conduct be diminished by such sums.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Plaintiffs Not Entitled to Emotional Distress Damages)

Champlain and WestCongress asserts and alleges that Plaintiff is not entitled to recover damages for emotional distress from Champlain and WestCongress as a matter of law.

**Case No.** 30-2026-01561335-CU-BC-NJC      3

CHAMPLAIN SPECIALTY INSURANCE COMPANY AND WESTCONGRESS INSURANCE SERVICES, LLC'S ANSWER TO PLANTIFFS' UNVERIFIED COMPLAINT

## TWELFTH AFFIRMATIVE DEFENSE

(Plaintiffs Not Entitled to Attorney Fees)

Champlain and WestCongress assert and allege that Plaintiffs are not entitled to recover attorney's fees from Champlain and/or WestCongress.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Plaintiffs Not Entitled to Punitive Damages)

Champlain and WestCongress assert and allege that Plaintiffs are not entitled to recover punitive damages from Champlain and/or WestCongress as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Lack of Personal Jurisdiction Over WestCongress)

WestCongress asserts and alleges that the Court lacks personal jurisdiction over WestCongress.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Lack of Personal Jurisdiction Over Champlain)

Champlain asserts and alleges that the Court lacks personal jurisdiction over Champlain.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Failure to Join Required Parties)

Champlain and WestCongress assert and allege that Plaintiffs have failed to join necessary parties. The Complaint seeks a declaration that non-parties RAF Development, LLC and Glenn Farmer are additional insureds and/or are otherwise entitled to coverage. These non-parties are interested persons whose absence presents a substantial risk that the defendants will incur inconsistent obligations with respect to the alleged duty to defend/indemnify them. For example, RAF Development, LLC and Glenn Farmer, as non-parties in this action, will not be bound by any adjudication that the Defendants owe them no coverage. Their absence thus presents a risk of inconsistent obligations owed by the Defendants to RAF and Mr. Farmer, if any, and the Complaint is subject to challenge based on their non-joinder.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Non-Liability of WestCongress as Claims Administrator)

Champlain and WestCongress assert and allege that WestCongress did not issue any insurance policy in this matter. Rather, WestCongress is a claims administrator for Champlain. Because

WestCongress acted as the claims administrator and is not a party to the insurance contract, it cannot be held liable for breach of contract, bad faith, or unfair business practices in the administration of the claim. (See, e.g., *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal. 3d 566, 576.) Further, a claims administrator like WestCongress owes no duty of care to an insured where, as here, there is only economic loss alleged by the insured. (*Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 Cal. App. 4th 249.) Accordingly, WestCongress cannot be held liable for negligence/negligent misrepresentation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Continuous or Progressive Injury or Damage Exclusion)

Champlain and WestCongress assert and allege that coverage is barred by the Continuous or Progressive Injury Exclusion in the applicable policies.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Insufficient Service of Process)

Champlain and WestCongress assert and allege that the Complaint is subject to challenge for insufficiency of service of process.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Failure to Join Required Parties)

Champlain and WestCongress assert and allege that Plaintiffs have sued them on an insurance policy that was issued by a non-party.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Lack of Privity/Lack of Standing)

Champlain and WestCongress assert and allege that Plaintiff John Martindale is not a named insured or additional insured on any policy issued by Defendants and therefore is not in privity with either of them.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (No Property Damage Caused by an Occurrence)

Champlain and WestCongress assert and allege that there is no coverage because the claims do not allege "property damage" caused by an "occurrence," or are otherwise outside the insuring agreement.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

(RAF Development, LLC and Glenn Farmer Are Not Additional Insureds)

RAF Development, LLC and Glenn Farmer are not additional insureds under the applicable policies because the construction contracts do not require them to be named as additional insureds for purposes of the Blanket Additional Insured Endorsement and because they do not otherwise qualify as an "insured" or "additional insured" under the applicable policies.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

(Failure to Cooperate)

Champlain and WestCongress assert and allege that the coverage is barred due to Plaintiffs' failure to cooperate, which has resulted in substantial prejudice to Defendants.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

(Voluntary Payments)

Champlain and WestCongress assert and allege that coverage is barred to the extent that Plaintiffs made voluntary payments on the claims without the consent of Defendants.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

(*Cumis* Not Triggered)

Plaintiffs have failed to identify any actual and significant conflict of interest which would necessitate the appoint of independent or *Cumis* counsel under California Civil Code section 2860.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

(Economic Loss Rule)

Plaintiffs' tort causes of action are barred by the economic loss rule to the extent they are seeking recovery in tort for purely economic loss.

WHEREFORE, Champlain and WestCongress pray for judgment as follows:

1.      That judgment be entered in favor of Champlain and WestCongress and against Plaintiff;

2.      That Plaintiff take nothing by his Complaint;

3.      That Champlain and WestCongress recover their costs in this action; and

///

///

4.      That Champlain and WestCongress be awarded such other relief as the Court may deem just and proper.


Dated:  May 15, 2026                              TITTMANN WEIX LLP


                                                 By: _____
                                                     Raymond J. Tittmann
                                                     Patrick M. Laurence

                                                 Attorneys for Defendants
                                                 CHAMPLAIN SPECIALTY INSURANCE COMPANY
                                                 and WESTCONGRESS INSURANCE SERVICES, LLC

**PROOF OF SERVICE**

*Martindale v. Selective Insurance Company of America, et al.*
Case No. 30-2026-01561335-CU-BC-NJC

I am an employee in the Los Angeles County, State of California. I am over the age of 18 years and not a party to the within action.  My business address is 350 S. Grand Ave., Suite 1630, Los Angeles, CA 90071. On May 15, 2026, I served the foregoing document entitled:

**CHAMPLAIN SPECIALTY INSURANCE COMPANY AND WESTCONGRESS INSURANCE SERVICES, LLC'S ANSWER TO PLANTIFFS' UNVERIFIED COMPLAINT**

on the person or persons listed below, through their respective attorneys of record in this action, by placing true copies thereof in sealed envelopes or packages addressed as shown below by the following means of service:

| | |
|---|---|
| Siavash Daniel Rashtian, Esq.<br>Saleem K. Erakat, Esq.<br>Rashtian Law Group, APC<br>15615 Alton Parkway, Suite 450<br>Irvine, CA 92618<br>daniel@rashtianlaw.com<br>saleem@rashtianlaw.com<br><br>Tel: (949) 420-9954<br><br>*Attorneys for Plaintiffs JOHN MARTINDALE, formerly dba "HORIZON UNDERPINNING," and HORIZON UNDERPINNING, LLC* | Lawrence Tabb, Esq.<br>Danica Lam, Esq.<br>Musick Peeler<br>333 South Hope Street, Suite 2900<br>Los Angeles, CA 90071<br>L.Tabb@musickpeeler.com<br>D.Lam@musickpeeler.com<br><br>Tel: (213) 629-7600<br><br>*Attorneys for Defendants, SELECTIVE INSURANCE COMPANY OF AMERICA; and MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY* |

☒   BY MAIL:  By placing the original and/or a true and correct copy enclosed in a sealed envelope with postage fully prepaid, in the U.S. mail at Los Angeles, California.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon, fully prepaid at Los Angeles, California, in the ordinary course of business.

☐   BY PERSONAL SERVICE:  By causing personal delivery of the document listed above to the person at the address set forth listed above.

☐   BY FACSIMILE:  I caused a copy of said document(s) to be sent via facsimile transmission to the interested party(ies) to the telephone number listed above, and in accordance with Rules 2003(3) and 2005(I).

☐   BY ELECTRONIC TRANSMISSION: By e-mailing the document(s) to the persons at the e-mail address(es) above.

☐   BY OVERNIGHT MAIL:  I caused a copy of said document(s) to be placed in an overnight mail depository for next day delivery.

**Case No.** 30-2026-01561335-CU-BC-NJC          8
CHAMPLAIN SPECIALTY INSURANCE COMPANY AND WESTCONGRESS INSURANCE SERVICES, LLC'S ANSWER TO PLANTIFFS' UNVERIFIED COMPLAINT

☒   STATE - I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Executed on May 15, 2026, at Huntington Beach, California.

*Kelly O'Brien*

_____
Kelly O'Brien

**MUSICK, PEELER & GARRETT LLP**

333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Lawrence A. Tabb (State Bar No. 141471)
 l.tabb@musickpeeler.com
Danica Lam (State Bar No. 266710)
 d.lam@musickpeeler.com

Attorneys for Defendants SELECTIVE
INSURANCE COMPANY OF AMERICA
and MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE - NORTH JUSTICE CENTER

| | |
|---|---|
| JOHN MARTINDALE, formerly doing business as "Horizon Underpinning," an individual, and HORIZON UNDERPINNING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA, a corporation domiciled in New Jersey; MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, an unknown entity domiciled in New Jersey; CHAMPLAIN SPECIAL TY INSURANCE COMPANY, a limited liability company domiciled in Delaware; WESTCONGRESS INSURANCE SERVICES, LLC, a Delaware limited liability company; and DOES I to 100, inclusive,<br><br>Defendant. | Case No. 30-2026-01561335-CU-BC-NJC<br>*[Assigned for all purposes to:*<br>*Hon. Donald F. Gaffney]*<br><br>**SELECTIVE INSURANCE COMPANY OF AMERICA AND MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY'S ANSWER TO THE COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Action Filed:    04/07/26<br>Trial Date:    None |

## <u>ANSWER</u>

Defendants SELECTIVE INSURANCE COMPANY OF AMERICA ("SICA") and MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY ("MUSIC"; SICA and MUSIC are sometimes collectively referred to as "Defendants") answer plaintiffs JOHN MARTINDALE and HORIZON UNDERPINNING, LLC's ("Plaintiffs") Complaint as follows:

1.      Pursuant to § 431.30(d) of the California Code of Civil Procedure, Defendants deny each and every allegation contained in the Complaint and further deny that Plaintiffs are entitled to any recovery, including declaratory judgment, as against Defendants or that Plaintiffs have been damaged in any amount whatsoever by reason of the conduct of Defendants.

2.      Further answering the Complaint on file herein, and the whole thereof, including each and every purported cause of action contained therein, Defendants deny that Plaintiffs sustained any injury, damage or loss by reason of any act or omission of Defendants or of any of its agents, servants, or employees.  Defendants further deny that Plaintiffs are entitled to any relief whatsoever under the Complaint, whether prayed for or otherwise.

## AFFIRMATIVE DEFENSES

In addition, without assuming the burden of proof on any matters that would otherwise rest with Plaintiffs, and expressly denying any and all wrongdoing, Defendants allege the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

3.      Defendants are informed and believe and based thereon allege that the Complaint and each cause of action set forth therein fails to allege facts sufficient to state a claim against Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

4.      Defendants are informed and believe and based thereon allege that the claims set forth against Defendants in the Complaint are barred, in whole or in part, by the applicable statutes of limitation.

## THIRD AFFIRMATIVE DEFENSE

### (Laches)

5.      Defendants are informed and believe and based thereon allege that the claims set forth against Defendants in the Complaint are barred, in whole or in part, by the

**MUSICK, PEELER & GARRETT LLP**

doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

6.     Defendants are informed and believe and based thereon allege that the claims set forth against Defendants in the Complaint are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

7.     Defendants are informed and believe and based thereon allege that the claims set forth against Defendants in the Complaint are barred, in whole or in part, by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

8.     Defendants are informed and believe and based thereon allege that the claims set forth against Defendants in the Complaint are barred, in whole or in part, to the extent that the doctrine of unclean hands applies.

## SEVENTH AFFIRMATIVE DEFENSE

### (Offset)

9.     Defendants are informed and believe and based thereon allege that any amounts that may be recovered through the Complaint, if any, must be reduced or offset by recoveries that Plaintiffs obtained, or will obtain, from other sources including, but not limited to, settlements with other parties, whether or not parties to this lawsuit.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Standing)

10.     The claims set forth by Horizon Underpinning, LLC against Defendants in the Complaint are barred, in whole or in part, because it lacks standing to maintain an action against Defendants.

## NINTH AFFIRMATIVE DEFENSE

### (Not An Additional Insured)

11. The claims set forth set forth by Horizon Underpinning, LLC against Defendants in the Complaint are barred because Horizon Underpinning, LLC was not an additional insured on MUSIC's policies at issue in the Complaint with respect to the underlying lawsuits.

## TENTH AFFIRMATIVE DEFENSE

### (No Claim for Attorneys' Fees)

12. The Complaint, and each and every purported cause of action therein, fails to state facts sufficient to state a claim for attorneys' fees against Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

### (No Claim for Punitive or Exemplary Damages)

13. The Complaint, and each and every purported cause of action therein, fails to state facts sufficient to state a claim for punitive or exemplary damages against Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

### (Lack of Malice, Oppression, Fraud)

14. Plaintiffs' allegations of malice, oppression, or fraud are insufficient to sustain an award of punitive or exemplary damages against Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Application of Civil Code Section 3294)

15. Defendants are informed and believe and based thereon allege that Plaintiffs cannot recover any amount for punitive damages as alleged in their Complaint because California Civil Code section 3294, pursuant to which punitive damages are sought, is void for vagueness, constitutes an unconstitutional penalty, violates specific State and Federal constitutional rights to procedural and substantive due process and equal protection under the laws thus exposing Defendants to punishment more than once for the same alleged offense, violates the excessive fines clause of the Eighth Amendment of the United States Constitution, gives the finder of fact unlimited discretion in imposing damages, and violates Defendants' rights to procedural due

MUSICK, PEELER
& GARRETT LLP

5255902.1                                      4

ANSWER TO COMPLAINT

process under the Fifth and Fourteenth Amendments of the United States Constitution.  The standard for punitive damages fails to comply with the procedural and substantive requirements for punitive damages set forth in *State Farm Mutual Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408 in that it lacks sufficiently objective criteria and procedural safeguards to give a jury adequate guidance on an appropriate range of proportionality for punitive damages.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Policy Provisions)

16.    Plaintiffs were fully aware of the limitations, conditions and provisions of the insurance policies at issue, and cannot complain about any alleged inadequacies.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

17.    Plaintiffs failed to take adequate steps to mitigate, minimize, or avoid the damages claimed, if any.  To the extent that Plaintiffs' damages have been increased by this failure to so mitigate, they should be barred from recovering against Defendants, or alternatively, any recovery against Defendants must be reduced by the amount by which the damages incurred are a result of that failure.

### SIXTEENTH AFFIRMATIVE DEFENSE

### (No Breach)

18.    The duties and obligations of Defendants with respect to events giving rise to this litigation are governed by the terms of the policies issued by MUSIC to John Martidndale. Defendants breached no duties or obligations owed under such policies and MUSIC is currently providing Mr. Martindale with a defense in the underlying action in which he is a defendant.

### SEVENTEENTH AFFIRMATIVE DEFENSE

### (Policy Terms)

19.    Plaintiffs' claim for entitlement to coverage, whether based upon the contract sued upon or any written policies of insurance issued by MUSIC to John Martindale must be specifically determined by the terms, conditions, provisions, and limitations of each and every subject policy of insurance, including all deductible amounts, policy limits, and time limits

MUSICK, PEELER
& GARRETT LLP

5255902.1

5

ANSWER TO COMPLAINT

(including policy expiration) contained in such policies, coverage if any, must be limited to the stated limits contained within the policies, as well as all other provisions affecting the existence and amount, if any, of a covered claim, including, but not limited to the policies' exclusions

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Covered Property Damage)

20.     Defendants are informed and believe and based thereon allege that there is no coverage for the identified underlying actions as those actions do not allege covered property damage and/or the property damage did not occur during MUSIC's relevant policy periods.

## NINETEENTH AFFIRMATIVE DEFENSE

### (No Coverage Pursuant to Exclusion J, Damage to Property)

21.     Defendants are informed and believe and based thereon allege that Plaintiffs' claims are barred, in whole or in part, by the following exclusion in the MUSIC policies:

2.  Exclusions

This insurance does not apply to:

j.  Damage To Property

"Property damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

## TWENTIETH AFFIRMATIVE DEFENSE

### (No Coverage Pursuant to Your Work Exclusion)

22. Defendants are informed and believe and based thereon allege that Plaintiffs' claims are barred, in whole or in part, by the following endorsement:

Exclusion l was replaced by the Policy's Your Work Exclusion Endorsement , which states in relevant part:

The Damage To Your Work exclusion is replaced by the following:

This insurance does not apply to:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". However, this exclusion shall only apply to "property damage" to that particular part of "your work" that the "property damage" arises out of.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (No Coverage Pursuant to Damage to Impaired Property)

23. Defendants are informed and believe and based thereon allege that Plaintiffs' claims are barred, in whole or in part, by the following exclusion in the MUSIC policies:

2. Exclusions

This insurance does not apply to:…

m. Damage To Impaired Property Or Property Not Physically Injured "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## **TWENTY-SECOND AFFIRMATIVE DEFENSE**

### **(No Coverage Pursuant to Exclusion – Contractors – Professional Liability)**

24.     Defendants are informed and believe and based thereon allege that Plaintiffs' claims are barred, in whole or in part, by the following endorsement in the MUSIC policies:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2.

Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

  a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

  b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph 3. below, professional services include:

  a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

  b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

MUSICK, PEELER
& GARRETT LLP

5255902.1

8

ANSWER TO COMPLAINT

## TWENTY SECOND AFFIRMATIVE DEFENSE

### (Intervening/Superseding Actions)

25.    The injuries and damages allegedly suffered by Plaintiffs, if any, were a direct and legal result of the intervening and superseding actions by third parties, whether named or unnamed, and not Defendants.

## TWENTY THIRD AFFIRMATIVE DEFENSE

### (Not Ripe)

26.    Plaintiffs' claims and causes of action are premature and not ripe for adjudication.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

### (Right to Amend)

27.    Defendants have insufficient knowledge or information at this time on which to form a belief as to whether additional affirmative defenses are available, and therefore Defendants reserve the right to amend and/or supplement this Answer to assert additional affirmative defenses as appropriate.

**WHEREFORE**, Defendants pray for judgment as follows:

1.    That the Complaint be dismissed with prejudice, and that Plaintiffs take nothing by reason of their Complaint;

2.    That judgment be entered in favor of Defendants;

3.    That Defendants be awarded its costs of suit and attorneys' fees incurred herein; and

4.    For such other and further relief as the Court deems just and proper.

///
///
///
///
///
///

MUSICK, PEELER
& GARRETT LLP

5255902.1

9

ANSWER TO COMPLAINT

DATED: May 15, 2026       MUSICK, PEELER & GARRETT LLP

By: _____
Lawrence A. Tabb
Danica Lam
Attorneys for Defendants SELECTIVE
INSURANCE COMPANY OF AMERICA and
MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

## **DEMAND FOR JURY TRIAL**

Defendants SELECTIVE INSURANCE COMPANY OF AMERICA and MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY hereby seek a jury trial on all causes of action and claims being alleged against it.

DATED:  May 15, 2026                    MUSICK, PEELER & GARRETT LLP

By: _____
    Lawrence A. Tabb
    Danica Lam
    Attorneys for Defendants SELECTIVE
    INSURANCE COMPANY OF AMERICA and
    MESA UNDERWRITERS SPECIALTY
    INSURANCE COMPANY

MUSICK, PEELER
& GARRETT LLP

5255902.1

11

ANSWER TO COMPLAINT

## PROOF OF SERVICE

**Martindale vs. Selective**
**Case No. 30-2026-01561335-CU-BC-NJC**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 333 South Hope Street, Suite 2900, Los Angeles, CA 90071-3048.

On May 15, 2026, I served true copies of the following document(s) described as **SELECTIVE INSURANCE COMPANY OF AMERICA AND MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY'S ANSWER TO THE COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Siavash Daniel Rashtian, Esq. | Attorneys for Plaintiffs JOHN MARTINDALE, |
| Saleem K. Erakat, Esq. | FORMERLY DBA "HORIZON |
| RASHTIAN LAW GROUP, APC | UNDERPINNING," and HORIZON |
| 15615 Alton Parkway, Suite 450 | UNDERPINNING, LLC |
| Irvine, CA 92618 | |
| Telephone: (949) 420-9954 | |
| daniel@rashtianlaw.com | |
| saleem@rashtianlaw.com | |

☒    **BY ELECTRONIC SERVICE:**  I electronically filed the document(s) with the Clerk of the Court by using the One Legal system.  Participants in the case who are registered users will be served by the One Legal system.  Participants in the case who are not registered users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 15, 2026, at Los Angeles, California.

*Linda Magdaleno*
_____
Linda L. Magdaleno

**MUSICK, PEELER & GARRETT LLP**

5255902.1

ANSWER TO COMPLAINT

# Exhibit 2

**MUSICK, PEELER & GARRETT LLP**

333 South Hope Street, Suite 2900
Los Angeles, California 90071-3048
Telephone (213) 629-7600
Facsimile (213) 624-1376

Lawrence A. Tabb (State Bar No. 141471)
  l.tabb@musickpeeler.com
Danica Lam (State Bar No. 266710)
  d.lam@musickpeeler.com

Attorneys for Defendants SELECTIVE
INSURANCE COMPANY OF AMERICA
and MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOHN MARTINDALE, formerly doing business as "Horizon Underpinning," an individual, and HORIZON UNDERPINNING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA, a corporation domiciled in New Jersey; MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, an unknown entity domiciled in New Jersey; CHAMPLAIN SPECIAL TY INSURANCE COMPANY, a limited liability company domiciled in Delaware; WEST CONGRESS INSURANCE SERVICES, LLC, a Delaware limited liability company; and DOES I to 100, inclusive,<br><br>Defendant. | **SELECTIVE INSURANCE COMPANY OF AMERICA AND MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY'S NOTICE OF CONSENT RE: REMOVAL OF ACTION**<br><br>Action Filed:　04/07/26<br>Trial Date:　None<br><br>Orange County Superior Court, Case No. 30-2026-01561335-CU-BC-NJC |

MUSICK, PEELER
& GARRETT LLP

5323606.1

**NOTICE OF CONSENT RE: REMOVAL OF ACTION**

Without waiving any of its defenses or any other rights, Defendants SELECTIVE INSURANCE COMPANY OF AMERICA ("SICA") AND MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY ("MUSIC") hereby consent to the notice of removal of this action from the Superior Court of the State of California, Orange County, wherein it is now pending, to this Court.  Removal of this action is proper for the reasons set forth in the Notice of Removal and exhibits thereto filed by Co-Defendants CHAMPLAIN SPECIAL TY INSURANCE COMPANY and WEST CONGRESS INSURANCE SERVICES, LLC.  SICA and MUSIC first received a copy of the Summons and the Complaint, the initial pleading setting forth the claim for relief upon which this action is based, on April 15, 2026.

DATED:  May 14, 2026                    MUSICK, PEELER & GARRETT LLP

By:  _____
     Lawrence A. Tabb
     Danica Lam
     Attorneys for Defendants SELECTIVE
     INSURANCE COMPANY OF AMERICA and
     MESA UNDERWRITERS SPECIALTY
     INSURANCE COMPANY

**MUSICK, PEELER & GARRETT LLP**

5323606.1                              1

**NOTICE OF CONSENT RE: REMOVAL OF ACTION**